Nathan Andrew **KNIATT**, Appellant,

v.

The **STATE** of Texas.

No. PD–0323–05.

Court of Criminal Appeals of Texas.

June 21, 2006.

Richard Gladden, Denton, for Appellant.

Cynthia W. Hellstern, Asst. County & District Attorney, Waxahachie, Matthew Paul, State's Attorney, Austin, for the State.

HOLCOMB, J., delivered the opinion of the Court, in which KELLER, P.J., and PRICE, JOHNSON, KEASLER, HERVEY, and COCHRAN, JJ., joined.

The Tenth Court of Appeals "found" that appellant had "met his burden of showing ... that his guilty plea [had been] involuntarily given," and ordered the trial court to grant appellant the habeas relief that he had requested. *Kniatt v. State,* 157 S.W.3d 83, 87 (Tex.App.-Waco 2005). We reverse and remand.

The relevant, undisputed facts, as reflected in the record, are as follows. On June 10, 2001, law enforcement officials in Ellis County searched appellant's person without a warrant, found methamphetamine, and then arrested him for posses-sion of that methamphetamine. The officials then placed appellant in the Ellis County Jail, where he stayed until released on bond about a week later.

On August 22, 2001, an Ellis County grand jury returned an indictment charging appellant with felony possession of less than one gram of methamphetamine. *See* Tex. Health & Safety Code § 481.115(a) & (b).

On December 7, 2001, the trial court held a pretrial hearing in this case. At that hearing, appellant's trial counsel, Ted Redington, and the assistant district attorney, Patrick Wilson, both informed the trial court that appellant had decided to reject a plea bargain to which he had previously agreed. Redington also informed the trial court that appellant had decided to retain different counsel. The trial court, speaking for the record and to appellant, responded as follows:

"All right. State versus Nathan Kniatt, set for trial on Monday [December 10, 2001]. As I understand from the attorneys, they thought they had a plea agreement. In fact, they did have a plea agreement, and today the defendant has reneged on that, doesn't want the agreement.

"I've also been informed he wants to fire his lawyer. All that's okay with me. I'll take all this up. Defendant's bond is revoked. He's going to jail pending trial.[1]

"Have a seat over there, sir. We'll set your trial when we get around to it."

On December 11, 2001, appellant, accompanied by Redington, returned to court and entered a guilty plea pursuant to a plea bargain substantially similar to the

---

1. The trial court's revocation of appellant's bond was plainly unlawful. As Professors Dix and Dawson have observed, "Texas law confers no general power upon judges ... to revoke bail and regard the revocation as rendering a defendant nonbailable." G. Dix & R. Dawson, 41 Tex. Prac. Series, *Criminal Practice and Procedure* § 16.152 (2d ed.2001).

one he had rejected previously. Appellant, who was eighteen years old at that time and of sound mind and average intelligence, swore under oath that his guilty plea was being entered "freely and voluntarily." The trial court, in accordance with the terms of the plea bargain, deferred an adjudication of appellant's guilt, placed him on community supervision for three years, and fined him $3,000.

On February 23, 2003, the State filed a motion to proceed with an adjudication of guilt. In its motion, the State alleged that appellant had violated several of the conditions of his community supervision.

On April 3, 2003, appellant filed a pre-conviction application for writ of habeas corpus, pursuant to Article 11.08 of the Texas Code of Criminal Procedure, and a motion to recuse the trial court judge from hearing that application or from hearing the State's motion to proceed with an adjudication of guilt. In his application, appellant alleged that his December 7, 2001, guilty plea had been entered "involuntarily." In his brief accompanying his application, appellant argued that "the trial court's [unlawful] action in [revoking his bond] and remanding [him] into the custody of the Ellis County Sheriff [to await] trial [coerced him and] rendered [his] subsequent plea involuntary." Appellant also argued that "the statements and actions of his former counsel, Redington, as well as those of Assistant District Attorney Wilson, operated to coerce [him into an] involuntary plea."

On April 28, 2003, an assigned judge held an evidentiary hearing on appellant's motion to recuse and denied it.

On June 4, 2003, the trial court held an evidentiary hearing on both the State's motion to proceed with an adjudication of guilt and appellant's application for writ of habeas corpus.[2] Midway through the hearing, the State asked that "the writ portion of [the] hearing" be postponed to a later date, so that the State would have more time in which to locate one of its witnesses. The trial court granted the State's request. At the conclusion of the hearing, the trial court also granted the State's motion to proceed with an adjudication of guilt, and then adjudicated appellant guilty of the primary offense. The court assessed appellant's punishment at incarceration for 200 days and a $3,000 fine.

On June 13, 2003, the trial court held an evidentiary hearing on appellant's application for writ of habeas corpus. At that hearing, the trial court received the testimony of four witnesses: appellant; appellant's father, Paul Kniatt; Redington; and Wilson.[3] Appellant testified that (1) immediately before the pretrial hearing on December 7, 2001, Wilson had "threatened" him "that if [he] didn't take the plea bargain on that day, that they wouldn't offer it again and they would give [him] the maximum sentence;" (2) contrary to what Redington and Wilson had told the trial court on December 7, 2001, he had never agreed to a plea bargain until shortly before his guilty plea on December 11, 2001; and (3) he had agreed to the plea bargain on December 11, 2001, only because he "didn't want to sit in jail without a bond for who knows how long."

2. A trial court may properly consider, in a single hearing, both a motion to proceed with an adjudication of guilt and an application for writ of habeas corpus. *See Jordan v. State*, 54 S.W.3d 783, 786 (Tex.Crim.App.2001).

3. Two of the witnesses (appellant and his father) testified in person at the June 13, 2003, habeas hearing. The other two witnesses (Redington and Wilson) testified in person at the April 28, 2003, recusal hearing, but their testimony at the recusal hearing was admitted for all purposes at the habeas hearing.

Appellant's father, Paul Kniatt, testified that immediately before the pretrial hearing on December 7, 2001, he had heard Redington warn appellant that if he rejected the plea bargain, "the judge was going to put him in jail."

Redington testified that (1) in late November 2001, he had met with appellant and had discussed with him all of his options, including the State's offer of a plea bargain involving deferred adjudication; (2) he had advised appellant "that a plea would probably be in his best interest," because appellant's only possible defense was an "arguable" motion to suppress; (3) appellant had telephoned him a few days after their November meeting and had accepted the State's offer; (4) immediately before the pretrial hearing on December 7, 2001, appellant "came [in] with his dad, and ... they were both in kind of a tizzy and talking about not wanting the plea bargain anymore;" (5) he had advised appellant at that time that if he reneged on the plea bargain, the trial court might revoke his bond and put him in jail to await trial; (6) sometime after the pretrial hearing on December 7, 2001, appellant's stepmother had telephoned him to relate that appellant had decided to accept the State's plea bargain offer after all; (7) neither he (*i.e.*, Redington) nor Wilson had ever tried to coerce appellant into accepting the plea bargain offer; and (8) appellant had never told him that he was pleading guilty because it was his only way to get out of jail. Redington's testimony continued:

> Q [by defense counsel]: Knowing this defendant and your interaction with him, 18–year–old young man, as to him particularly, did what [the trial court] did [*i.e.*, revoking appellant's bond], was it likely to cause, likely to interfere with him completely exercising his own volition freely and voluntarily [on December

> 11, 2001] as to whether or not to take that plea [bargain offer]?

> \* \* \*

> A: I don't think so.

> Q: And can you give the reasons why you think that would have no effect on someone's decision whether to plead or not?

> A: Because we had a thorough and complete discussion about all of his options ten days before. And on the basis of that thorough discussion, he made the free and independent choice to accept the plea bargain. It wasn't until his dad came in with him [on December 7, 2001] that his judgment seemed to be affected. I think rather than—I don't think it was the jail that caused him to change his mind.

> Q: Well, he changed his mind in between ... the moment his bond was revoked and when he came back, didn't it? Okay. Prior to his bond being revoked, he didn't want to take the plea; will you agree with me on that? He refused?

> A: Well, I don't know. Before [December 7, 2001] he did want to take the plea. Ten days ago he was more than happy to take the plea.

> Q: I'm talking about on December 7th.

> A: He comes in with a whole new idea with his dad.

> \* \* \*

> Q: What happened between the time that the judge revoked his bond, since you didn't go see him [in the jail], and the time that he came into court on Tuesday [December 11, 2001] that would have caused the taint of what had occurred on the 7th to dissipate?

> A: Cool reflection perhaps on what was in his best interest.

Finally, Wilson testified in relevant part that he had never threatened or coerced appellant in any way.

At the close of the evidence at the June 13, 2003, habeas hearing, appellant argued that he had proved by a preponderance of the evidence that his guilty plea had been entered involuntarily. More specifically, appellant argued that he had proved that on December 11, 2001, "he [had] reasonably felt that he was coerced and that his only avenue to get out of jail was to waive his right to trial by jury and ... accept the plea bargain." Appellant argued further that he had proved that, in pleading guilty, he had "acquiesc[ed] to what he [had] perceived to be actions by this court, by his own attorney, as well as the prosecution to coerce him into accepting that plea agreement." As for the relief sought, appellant asked the trial court to set aside both the order placing him on deferred adjudication and the subsequent judgment of conviction.

On June 19, 2003, the trial court issued an order denying appellant's request for habeas corpus relief. Also on June 19, 2003, the trial court issued findings of fact in which it found that, on December 7, 2001, appellant had in fact reneged on a plea bargain, as Redington had claimed. The trial court also admitted in its findings of fact that it had "sanctioned" appellant, by revoking his bond, for his decisions to renege on the plea bargain and replace his counsel.

Appellant appealed from both the trial court's order denying his request for habeas corpus relief and the visiting judge's order denying his motion to recuse. With respect to the trial court's order denying his request for habeas corpus relief, appellant argued that the trial court had erred in rejecting the legal and factual arguments he had made in that court.

The Tenth Court of Appeals granted appellant relief on his habeas claim and did not reach his recusal claim. The court of appeals explained its decision as follows:

"Kniatt argues that the trial court erred in denying his application for writ of habeas corpus on the grounds that his plea on December 11, 2001, was not voluntarily given....

\* \* \*

"Kniatt contends that the statements and actions of his former counsel [Redington], the assistant district attorney [Wilson], and the trial court operated to render his plea involuntary....

\* \* \*

"Kniatt contends that the trial court's action in revoking his bond and ordering him held without bond pending trial constituted an unconstitutional punishment in violation of the Due Process Clause of the Fourteenth Amendment of the United States Constitution.... Kniatt argues that the trial court's action was intended to coerce him to plead guilty and punish him for exercising his right to trial by jury.

"In its findings of fact on the habeas application, the trial court acknowledged that it 'sanctioned' Kniatt by revoking his bond and remanding him to jail in response to his decision to renege on the plea bargain and replace his counsel....

"The record supports Kniatt's contention that the trial court improperly revoked his bond. However, Kniatt must also show that the trial court's action pressured him to plead guilty. Our review of the record persuades us that a person in Kniatt's position would have reasonably believed that his incarceration was the result of his decision not to plead guilty. At the hearing on Kniatt's motion to recuse, Redington testified

that he had told Kniatt that if he did not plead guilty the judge was likely to send him to jail to await a trial date. Kniatt testified that he subjectively felt pressured to change his plea and enter a plea of guilty. He testified that the reason he changed his mind between December 7 and December 11 was because he did not want to 'sit in jail without a bond for who knows how long.' At the time Kniatt entered his plea, he had been in jail for four days and did not know when his case would be set for trial.

\* \* \*

"We find that Kniatt has met his burden of showing by a preponderance of the evidence that his guilty plea was involuntarily given. We find that the trial court erred in denying Kniatt's application for writ of habeas corpus. Accordingly, we sustain that issue. Having sustained this issue, we need not address Kniatt's additional issue arguing that the [assigned judge] erred in denying his motion to recuse the trial judge from considering the motion to adjudicate and the habeas application.

"We reverse the trial court's denial of Kniatt's application for a writ of habeas corpus and remand to the trial court to grant Kniatt relief consistent with this opinion. We order the trial court to set aside the judgment adjudicating guilt and proceed with a new trial."

*Kniatt v. State,* 157 S.W.3d at 85–87.

■ The State subsequently filed a petition for discretionary review, in which it puts forth two grounds for review. In its first ground, the State argues that the court of appeals lacked jurisdiction to review the trial court's ruling on appellant's application for writ of habeas corpus, because the trial court itself, at the time it heard the application, lacked jurisdiction to

hear it. The trial court lacked jurisdiction to hear the application, the State's argument continues, because the trial court had already adjudicated appellant guilty by the time it heard his application. In its second ground for review, the State argues that the court of appeals erred in reversing the trial court's ruling on appellant's application for writ of habeas corpus because the court of appeals used an incorrect, *de novo* standard of review rather than the correct, abuse-of-discretion standard of review.

We granted the State's petition to consider these two grounds for review. *See* Tex.R.App. Proc. 66.3(e). We turn first to the State's first ground, relating to the lower courts' jurisdiction. At the time appellant filed his application for writ of habeas corpus, it was a pre-conviction application, and, pursuant to Article 11.08, the trial court had jurisdiction to hear it. Did the trial court lose jurisdiction to hear appellant's application once that court adjudicated him guilty?

In *Ex parte Johnson,* 12 S.W.3d 472 (Tex.Crim.App.2000), Mark Anthony Johnson filed a post-conviction application for writ of habeas corpus while his direct appeal was still pending and, therefore, before his conviction became final. Under Article 11.07, this Court has no jurisdiction to consider post-conviction applications until the underlying convictions become final. We dismissed Johnson's application for lack of jurisdiction, even though by the time we dismissed the application his conviction had become final, "because the application ... was filed during the pendency of the direct appeal." 12 S.W.3d at 473. We thus held, in effect, that the jurisdiction of a court to consider an application for writ of habeas corpus is determined at the time the application is filed. We adhere to that holding today and hold that the trial court in this case did not lose jurisdiction to hear appellant's pre-convic-

tion application once that court adjudicated him guilty. We overrule the State's first ground for review.

■■■ We turn next to the State's second ground for review, relating to the court of appeals' standard of review. A guilty plea constitutes a waiver of three constitutional rights: the right to a jury trial, the right to confront one's accusers, and the right not to incriminate oneself. *Boykin v. Alabama*, 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Accordingly, a guilty plea, to be consistent with due process of law, must be entered knowingly, intelligently, and voluntarily. *Id.* at 242, 89 S.Ct. 1709; *McCarthy v. United States*, 394 U.S. 459, 466, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969). To be "voluntary," a guilty plea must be the expression of the defendant's own free will and must not be induced by threats, misrepresentations, or improper promises. *Brady v. United States*, 397 U.S. 742, 755, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). A defendant's sworn representation that his guilty plea is voluntary "constitute[s] a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73–74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977).

■■■ An applicant seeking habeas corpus relief on the basis of an involuntary guilty plea must prove his claim by a preponderance of the evidence. *Ex parte Morrow*, 952 S.W.2d 530, 535 (Tex.Crim. App.1997). An applicant's delay in seeking habeas corpus relief may prejudice the credibility of his claim. *Ex parte Young*, 479 S.W.2d 45, 46 (Tex.Crim.App.1972). An appellate court reviewing a trial court's ruling on a habeas claim must review the record evidence in the light most favorable to the trial court's ruling and must uphold that ruling absent an abuse of discretion. *Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex.Crim.App.2003).

Given the record evidence in this case, especially Redington's testimony, the trial court could have reasonably concluded that appellant had accepted the State's offer of a plea bargain and had pled guilty on December 11, 2001, not because the trial court had punished him by revoking his bond and putting him in jail to await trial, but because he had reasonably concluded that it was in his best interest to accept the plea bargain and take deferred adjudication community supervision and a modest fine. That is to say, on this record the trial court could have reasonably concluded that (1) in late November 2001, Redington had advised appellant that it was probably in his best interest to accept the State's offer of a plea bargain; (2) appellant had initially agreed to the plea bargain but had later changed his mind, probably because of his father's influence; (3) sometime between December 7, 2001, and December 11, 2001, appellant had decided to accept the State's offer of a plea bargain after all; (4) appellant had later filed an application for writ of habeas corpus, not because his guilty plea had been involuntary but because he had wanted to avoid the consequences of his failure to abide by the terms of his community supervision; (5) appellant had been sincere when, on December 11, 2001, he had sworn that his guilty plea was voluntary; and (6) appellant had decided later that he had pled guilty only because he "didn't want to sit in jail without a bond for who knows how long."

We note that the record contains no evidence that appellant, at the time he pled guilty, was so gripped by fear of incarceration that, even with the assistance of counsel, he could not rationally weigh the advantages of pleading guilty against the disadvantages of going to trial. We also note that the trial court could believe or disbelieve any of the witnesses and could properly take into account the fact

that appellant made no claim of an involuntary plea until after the State filed its motion to proceed to an adjudication of guilt.

In summary, we discern no abuse of discretion on the part of the trial court. Given the record evidence, the trial court could have reasonably concluded that appellant had entered his guilty plea voluntarily, *i.e.,* that appellant's guilty plea had not been induced by threats, misrepresentations, or improper promises, and the court of appeals erred in holding otherwise. We sustain the State's second ground for review.

We reverse the judgment of the court of appeals and remand the case to that court so that it may consider appellant's remaining claims.

KELLER, P.J., also filed a concurring opinion.

MEYERS, J., did not participate.

WOMACK, J., concurred in the result.

KELLER, P.J., concurring.

I join the Court's opinion but write separately to comment on certain published opinions relied upon by the State, and by the Court of Appeals's dissent, in arguing that the Court of Appeals lacked jurisdiction to address the merits of applicant's pre-conviction habeas application. These

cases are *Ex parte Branch,*[1] *Martinez v. State,*[2] *Saucedo v. State,*[3] and *Hubbard v. State,*[4] which all address not jurisdiction, but the doctrine of mootness.[5]

This case differs from these mootness cases. *Branch* held that the return of an indictment rendered moot the question of probable cause to hold the defendant,[6] and *Martinez* held that a conviction rendered moot a complaint regarding bail because the defendant was "no longer subject to pre-trial confinement."[7] Essentially, these types of claims apply only at certain stages of the prosecution, and they disappear once the prosecution progresses past the stage in question. By contrast, the habeas claim in the present case purports to undermine the validity of the conviction, and so does not disappear after conviction like complaints regarding probable cause or bail.

*Saucedo* and *Hubbard* are more like the present case. They too addressed claims that did not disappear with the imposition of conviction.[8] But in both cases, the courts held that the claims need not be addressed in an appeal from habeas proceedings because they could be raised in an appeal from the conviction itself.[9] The *Saucedo* court derived this holding from the proposition that "an application for writ of habeas corpus should not be entertained where there is an adequate remedy

1. 553 S.W.2d 380 (Tex.Crim.App.1977).

2. 826 S.W.2d 620 (Tex.Crim.App.1992).

3. 795 S.W.2d 8 (Tex.App.-Houston [14th Dist.] 1990, no pet.).

4. 841 S.W.2d 33 (Tex.App.-Houston [14th Dist.] 1992, no pet.).

5. Mootness can implicate jurisdiction, but only to the extent of the Texas Constitution's implied prohibition against advisory judicial opinions. *Patterson v. Planned Parenthood,* 971 S.W.2d 439, 442–443 (Tex.1998).

6. 553 S.W.2d at 381.

7. 826 S.W.2d at 620.

8. *Saucedo,* 795 S.W.2d at 9 ("Appellant raises several issues which may be suitable for consideration on appeal of his conviction."); *Hubbard,* 841 S.W.2d at 33 (double jeopardy question).

9. *Saucedo,* 795 S.W.2d at 9; *Hubbard,* 841 S.W.2d at 33.

at law."[10] Even if we were to adopt the holdings of these lower court decisions, this case would be distinguishable because the claim here (an attack on the voluntariness of the plea in a plea bargain context) would, for various reasons, be barred from consideration in an appeal from the adjudication of guilt.[11] The only other avenue for raising appellant's claim would be a post-conviction application for a writ of habeas corpus. If the choice is simply between habeas proceedings now and habeas proceedings later, the availability of those later proceedings cannot really be said to render the timely-filed pre-conviction habeas proceedings moot.[12]

With these comments I join the Court's opinion.

---

10. 795 S.W.2d at 9; *see also Hubbard,* 841 S.W.2d at 33 (citing *Saucedo* ).

11. *See Manuel v. State,* 994 S.W.2d 658 (Tex. Crim.App.1999); TEX. R. APP. P. 25.2(a)(2); TEX. CODE CRIM. PROC., Art. 42.12, § 5(b).

12. *See Jordan v. State,* 54 S.W.3d 783 (Tex.Crim.App.2001)(recognizing a defendant's ability to litigate a pre-conviction habeas application at the same time as the revocation hearing and to carry the issue up on appeal). In its brief, the State complains that appellant filed his habeas application in the

original criminal action instead of as a separate proceeding. This complaint was not discussed in the Court of Appeals's opinion nor was it raised in the State's petition. Consequently, I will not address it here.