

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-11-00069-CR

EX PARTE TRACY WAYNE TOW

----------

FROM THE 371ST DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

Appellant Tracy Wayne Tow appeals the trial court's denial of his application for a writ of habeas corpus. In two related issues, he challenges the trial court's finding that he did not set forth new facts that unquestionably establish his innocence for causing bodily injury to a child.[2] Upon determining that the trial court did not abuse its discretion by denying habeas relief, we affirm.

---

[1]*See* Tex. R. App. P. 47.4.

[2]*See* Tex. Penal Code Ann. § 22.04(a) (West 2011). Under the circumstances of this case, appellant's crime was a third-degree felony. *See id.* § 22.04(f).

## Background Facts

C.S. was nine years old when she first told her mother, Jody, that appellant had touched her "in [her] private places." Jody told the police, and C.S. gave a videotaped interview.[3] A grand jury indicted appellant with four sex-related crimes. Appellant entered a plea bargain in which he pled guilty to causing bodily injury to a child, which was handwritten as a fifth count on his indictment.[4] As part of his plea, appellant judicially confessed to committing each act in the indictment. The trial court placed appellant on a five-year term of deferred adjudication community supervision in February 2007.

As part of his community supervision, the trial court imposed sex offender conditions.[5] For example, the trial court required appellant to complete a sex offender treatment course. Additionally, the court ordered appellant to complete polygraph examinations without showing signs of deception. During his

---

[3]The trial court admitted a recording of this interview as an exhibit during the hearing on appellant's application.

[4]Count five stated that appellant, on or about April 1, 2005, intentionally or knowingly caused bodily injury to C.S., a child younger than fifteen years of age, by striking her with his hand. The other four counts of appellant's indictment alleged second-degree felonies of indecency with a child. *See id.* § 21.11(a)(1), (d) (West 2011). A conviction for indecency with a child would have required appellant to register as a sex offender. *See* Tex. Code Crim. Proc. Ann. art. 62.001(5)(A) (West Supp. 2010).

[5]Imposition of the sex offender conditions was part of the plea bargain agreement.

community supervision, appellant admitted to having sexually abused C.S. to his psychotherapist and his community supervision officer.

In the latter part of 2010, however, C.S. recanted her story about the abuse. Appellant then began denying that he had fondled C.S. In October 2010, under article 11.072 of the code of criminal procedure, he filed an application for a writ of habeas corpus based on C.S.'s recantation, and he also filed a motion to withdraw his guilty plea.[6] Appellant's application included a document dated September 22, 2010 and signed by C.S. that stated,

> My name is [C.S.] and I am writing this to tell you that the statement I said 5 years ago is not true. My Aunt Lori . . . told me that if I wanted to live with her and [Jody] that I had to say that [appellant] had touched me in [inappropriate] places. . . . I am writing you this so I can get my family [together again]. I am very sorry for what I have caused to everyone. I just want to bring my family back [together].

In December 2010, the State filed a petition that asked the trial court to revoke appellant's community supervision and adjudicate him guilty. The State alleged that appellant had violated his community supervision by, among other allegations, being discharged from sex offender treatment the month before, failing to assume responsibility for his offense,[7] and viewing sexually explicit

---

[6]*See* Tex. Code Crim. Proc. Ann. art. 11.072 (West 2005) (concerning the procedures for litigating applications for writs of habeas corpus in community supervision cases).

[7]A polygraph examiner testified over appellant's objection that appellant showed deception when he denied rubbing C.S.'s vagina over her clothing.

material.[8]  The State also filed a response to appellant's application, stating in part, "In order for the Court to resolve whether the new facts unquestionably establish the applicant's innocence, the Court must determine whether [C.S.'s] recantation is credible."

During a February 2011 hearing,[9] when asked about why she had originally alleged that appellant had molested her, C.S. testified,

> My Aunt Lori, she had told me that if I wanted to live with [Jody] --
> because [Jody] was out of town, and she came back.  And [Lori]
> said, if I wanted to live with [Jody], I say that Tracy touched me and
> in my private places.  She said to say that because my Aunt
> [Thomesia] wouldn't let me come live with my mom.
>
>     . . . .
>
>     . . . [Lori] had told me what to say.[10]

C.S. explained that Jody was living with Lori (Jody's sister) at the time, while C.S. was living with appellant and Thomesia.  After C.S. made the allegations against appellant, she lived with Jody and Lori.

---

[8]Appellant pled not true to each of the State's allegations in its petition to revoke his community supervision.  The trial court, however, revoked the community supervision, found appellant guilty, and sentenced him to eight years' confinement.  The propriety of the trial court's decisions to revoke appellant's community supervision and to adjudicate him guilty is not at issue in this appeal.

[9]*See id*. art. 11.072, § 6(b).

[10]Specifically, according to C.S., Lori told her to say that C.S. was popping appellant's back when he put her on a bed and started touching her.  C.S. was fifteen years old when the trial court held its hearing on appellant's application for a writ of habeas corpus.

4

Lori admitted that she had developed a plan for C.S. to live with her and Jody instead of appellant and Thomesia, but Lori denied that she told C.S. to accuse appellant of fondling her. She said that while she did not tell C.S. to make sexual allegations, she did not believe that appellant had fondled C.S. Mayra Pinedo, appellant's community supervision officer, testified that before November 11, 2010, appellant had told her that on twelve occasions over a ten to eleven month period, he fondled C.S.[11]

The trial court found Lori's testimony credible and did not believe that C.S.'s recantation was genuine. Thus, the trial court denied appellant's application for a writ of habeas corpus as well as his motion to withdraw his plea of guilty. Appellant brought this appeal.

### The Trial Court's Decision to Deny Habeas Corpus Relief

In two related issues, appellant asserts that the trial court incorrectly denied his application for a writ of habeas corpus.

**Standard of review and applicable law**[12]

Absent an abuse of discretion, we must affirm a court's decision on whether to grant the relief requested in a habeas corpus application. *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App.), *cert. denied*, 549 U.S. 1052

---

[11]Thus, appellant admitted to inappropriately touching C.S. more times than the indictment alleged.

[12]Appellant argues for a standard of review that differs from the one discussed below. We will address the substance of appellant's issues under the correct standard.

(2006); *Ex parte Karlson*, 282 S.W.3d 118, 127 (Tex. App.—Fort Worth 2009, pet. ref'd). We review the evidence in the light most favorable to the trial court's ruling. *Kniatt*, 206 S.W.3d at 664. In conducting our review, we afford great deference to the trial court's findings of fact and conclusions of law that are supported by the record. *Karlson*, 282 S.W.3d at 127–28. We also afford great deference to the trial court's application of the law to the facts to the extent that the resolution of the ultimate question turns on an evaluation of credibility and demeanor. *Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex. Crim. App. 2003), *overruled in part on other grounds by Ex parte Lewis*, 219 S.W.3d 335, 371 (Tex. Crim. App. 2007).

After being placed on community supervision, a defendant may file a habeas corpus application to challenge the order in which community supervision was imposed. Tex. Code Crim. Proc. Ann. art. 11.072, § 2(b)(1). "[C]laims of actual innocence based upon newly discovered evidence are cognizable on post-conviction writs of habeas corpus." *Ex parte Brown*, 205 S.W.3d 538, 544 (Tex. Crim. App. 2006). Appellant has raised a *Herrera*[13] claim by asserting innocence based on the newly discovered evidence of C.S.'s recantation. *See Brown,* 205 S.W.3d at 544; *Ex parte Mello III,* No. 02-10-00200-CR, 2011 WL 2611243, at *1 (Tex. App.—Fort Worth June 30, 2011, no pet. h.). Our decision in *Mello III* recites the law with regard to *Herrera* claims:

---

[13] *See Herrera v. Collins*, 506 U.S. 390, 113 S. Ct. 853 (1993).

6

In reviewing a *Herrera* claim, the habeas court must first consider whether the applicant presented newly discovered evidence that affirmatively establishes his innocence. If the applicant presents such evidence, the habeas court then determines whether the applicant proved by clear and convincing evidence that no reasonable juror would have convicted him in light of the newly discovered evidence. The habeas court must examine the "newly discovered evidence" and determine whether the "new" evidence, when balanced against the "old" inculpatory evidence, *unquestionably establishes the applicant's innocence*. The habeas court does not review the fact finder's verdict but instead decides whether the newly discovered evidence would have convinced the fact finder of the applicant's innocence. If the applicant entered a guilty plea, the guilty plea—along with any evidence entered, or stipulation to the evidence, supporting the plea—must be considered in weighing the old evidence against the new evidence.

2011 WL 2611243, at *1 (emphasis added) (citations and footnotes omitted). Appellant recognizes that the trial court, as the trier of fact, may choose to accept or reject all or any part of a witness's testimony. *Peterson*, 117 S.W.3d at 819 n.68; *Ex parte Gibson*, 149 Tex. Crim. 543, 544–45, 197 S.W.2d 109, 110 (1946).

**Analysis**

The trial court was compelled to resolve competing evidence: C.S.'s recantation hinged on her allegation that Lori had told her to falsely accuse appellant of molesting her, while Lori denied doing so. The trial court expressly found that Lori's testimony in that regard was credible while C.S.'s recantation was not, and that court was in a better position to determine credibility than we

7

are because it viewed the witnesses and their demeanor when they testified.[14] *See Karenev v. State*, 281 S.W.3d 428, 438 n.11 (Tex. Crim. App. 2009) ("When it comes to factual findings, the trial court, not the appellate court, is in a better position to make the determination."); *Ex parte Thompson*, 153 S.W.3d 416, 417–18 (Tex. Crim. App. 2005); *see also Skinner v. State*, 293 S.W.3d 196, 204 (Tex. Crim. App. 2009) ("We review deferentially the state district court's determination of the credibility of a recantation."); *Driggers v. State*, 940 S.W.2d 699, 709 (Tex. App.—Texarkana 1996, pet. ref'd) ("We do not determine the victim's credibility. What we have to determine is whether the trial court abused its discretion in not accepting her new testimony as true. We therefore review the record to determine if there is any evidence that reasonably supports the court's decision.").

The trial court could have determined that C.S.'s recantation was not credible because it was motivated by her stated desire to bring her family back together. According to C.S.'s testimony, after recanting her allegations that appellant had fondled her, C.S. has had more opportunities to visit with her sisters.

---

[14]Lori did not believe that Tracy had ever fondled C.S. As explained above, however, the trial court was authorized to accept only part of Lori's testimony. Lori seemed to believe that Jody (who, according to Lori, had falsely accused her father of molestation) persuaded C.S. to falsely claim that appellant abused her. But Lori also said that when C.S. told Jody that appellant had abused her, Jody "went ballistic" and started crying.

Moreover, the record casts some doubt on the validity of the motivation that Lori allegedly had to persuade C.S. to lie (allowing C.S. to live with her and Jody instead of appellant and Thomesia).  Lori explained that Thomesia did not believe that Jody was responsible and therefore did not want to allow C.S. to live with Jody.  In the past, Jody had left C.S. with appellant and Thomesia while Jody spent long periods of time with men.  But according to Lori, there had never been a court order removing C.S. from Jody's care; thus, Thomesia may not have had an enforceable right to keep C.S. if Jody had merely sought her return.[15]

Next, appellant pled guilty to the offense against C.S., and the trial court was entitled to give "great respect" to that plea.  *See Mello III*, 2011 WL 2611243, at *1 (citing *Ex parte Tuley*, 109 S.W.3d 388, 391 (Tex. Crim. App. 2002)).  Also, during appellant's community supervision, he admitted his offense against C.S. to multiple people.  First, he admitted to a polygraph examiner that he "may have gotten carried away[,] . . . and that he may have reached over and rubbed [C.S.'s] vagina."  He later told the same examiner that he "did touch [C.S.'s] vagina over her clothing."  Second, he confessed his offense to his psychotherapist.  Third, he made multiple admissions of fondling C.S. to his

_____

[15]As argued by appellant, however, it appears that C.S.'s family "did not function in terms of court orders."

9

community supervision officer and stopped making the admissions only after he knew that he was facing potential revocation of his community supervision.[16]

After hearing these facts, the trial court found that appellant had not "set forth new facts which unquestionably establish his innocence." On appeal, appellant argues that he met his burden of showing by clear and convincing evidence that no rational jury would have convicted him in light of the new evidence. He challenges the trial court's decision on a theory that a rational jury would reconcile C.S.'s and Lori's testimony by finding that C.S. was willing to admit to lying about the fondling but was not willing to accept responsibility for the consequences of those lies. Therefore, he argues that a jury would find that C.S. cast the blame on Lori to avoid any repercussions that could result from her recantation.[17] Appellant's theory is interesting and possible, but it was not clearly and convincingly proven, and it certainly does not *unquestionably* establish his innocence. *See Mello III*, 2011 WL 2611243, at *1. As explained above, even if Lori had not testified, under the circumstances in this case, including the facts that appellant had pled guilty and admitted the offense to various people, the trial judge was entitled to disbelieve C.S.'s later statement and accept her earlier

---

[16]When he testified at the hearing on the State's petition to revoke his community supervision, appellant stated that he had lied for two years by detailing how he had fondled C.S. because he did not want his community supervision to be revoked.

[17]In essence, therefore, appellant suggests that C.S. recanted a false story by telling another false story.

10

statement as true.  *See Moreno v. State*, 1 S.W.3d 846, 853 (Tex. App.—Corpus Christi 1999, pet. ref'd).

Based on our review of the law and the record before us, we cannot say that the trial court abused its discretion by denying appellant's application for a writ of habeas corpus.  *See Mello III*, 2011 WL 2611243, at *1, *10.  We therefore overrule appellant's issues.

## Conclusion

Having overruled both issues, we affirm the trial court's judgment denying appellant's application for a writ of habeas corpus.

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL:  LIVINGSTON, C.J.; WALKER and MCCOY, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  August 18, 2011