

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

**NO. 02-14-00020-CR**

EX PARTE DIMAS ROJAS
MARTINEZ

----------

FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

Appellant filed a notice of appeal from the trial court's order denying his application for habeas corpus relief under article 11.072 of the code of criminal procedure. Tex. Code Crim. Proc. Ann. art. 11.072, §§ 7(a), 8 (West Supp. 2013). We affirm.

## Background

On June 3, 2013, appellant pled guilty to indecency with a child pursuant to a plea bargain and, in accordance with the plea bargain, the trial court placed

---

[1]*See* Tex. R. App. P. 47.4.

him on five years' deferred adjudication community supervision. As a result of his plea, appellant was detained by the United States Immigration and Customs Enforcement (ICE) in July 2013. In September 2013, appellant filed an application for writ of habeas corpus, in which he claimed that his trial counsel rendered ineffective assistance because, at the time of his plea, his counsel failed to inform appellant that he would be subject to mandatory removal from the United States. *See* 8 U.S.C.A. §§ 1101(a)(43)(A), 1227(a)(2)(A)(iii) (West 2005).

In an affidavit attached to his application, appellant averred that his attorney knew that he was a legal permanent resident of the United States, that he decided to accept the plea deal because his attorney told him "it was a better deal than previous offers," and that only after he signed the plea documents did his attorney tell him he should consult with an immigration lawyer "just in case immigration . . . [came] to see" him. According to appellant, "[a]t the time of the plea [he] was[ ]unaware[ ]that[ ]there would be such dire immigration consequences," and he would not have pled guilty if he had known.

The State filed with the trial court an affidavit from appellant's trial counsel, in which counsel averred that he was surprised when appellant accepted the State's plea offer, that appellant did not want to risk prison time, and that the trial judge admonished him specifically on deportation and exclusion. According to appellant's counsel, he made "[n]o recommendation to [appellant] to consult [an] immigration attorney before [the] plea because nothing could be done to assist his status on a 3g offense."

The trial court also held an evidentiary hearing on appellant's application. At the hearing, appellant's trial counsel testified that there was nothing an immigration lawyer could have done for appellant in his circumstances, so he did not refer appellant to an immigration lawyer before advising him to accept the plea. Appellant's counsel testified that he initialed and had appellant initial the section of the plea admonishments that says a plea of guilty could result in deportation from the United States; that was the only paragraph he had appellant initial specifically. He further testified that when going over this admonishment with appellant, he told him that "the expectation is that . . . if they [ICE] take action, it will be a removal and there is not anything that an immigration attorney can do to help you with that." Appellant's counsel admitted that he did not know for sure whether appellant "truly understood" the admonishment, but he said he explained it and felt comfortable that appellant understood. He also said the trial judge explained the immigration consequences and that appellant listened.

According to appellant's trial counsel, the only thing an immigration lawyer could have advised appellant was that if he took the plea, he could be removed from the country, which is what appellant's counsel advised. He said this would have been a good case as to punishment but that it was not a good case for obtaining an acquittal on guilt-innocence. He said appellant understood the only hope he had was acquittal. He also testified that there were no language difficulties at all.

The trial court adopted the State's proposed memorandum, which included the following pertinent findings of fact and conclusions of law:

12. [Counsel] believed that the State's guilt-innocence case was strong despite credibility issues involving the child[ ]victim's mother.

13. [Counsel] was aware that the applicant was a permanent resident alien and not a United States citizen.

14. [Counsel] was aware that criminal defense attorneys have an obligation to advise their clients regarding the potential immigration consequences of a guilty plea.

15. [Counsel's] normal practice is to refer non-citizen clients to an immigration attorney when needed.

16. [Counsel] did not refer the applicant to an immigration attorney because the immigration consequences were clear – the applicant would be deported if convicted of a 3g offense.

17. [Counsel] did not believe that an immigration attorney could provide the applicant any more information regarding his potential deportation consequences.

18. The applicant understood that acquittal was his only hope of avoiding immigration consequences.

19. Due to the applicant's understanding that acquittal was his only hope of avoiding immigration consequences, [counsel] did not extensively discuss the immigration consequences of entering a guilty plea.

. . . .

22. The State made an original plea bargain offer of seven years' confinement.

23. Shortly before trial, the State made a new plea bargain offer of two years' confinement or five years' deferred adjudication community supervision.

24. [Counsel] understood that both plea bargain offers had immigration consequences for the applicant.

25. The State did not make an immigration-safe plea bargain offer.

26. There is no evidence that the State would have offered, considered or accepted a plea bargain agreement for an offense not resulting in the same immigration consequences.

27. The applicant accepted the State's five years' deferred adjudication community supervision plea bargain offer because he was concerned with going to prison.

28. [Counsel] was surprised that the applicant accepted the plea bargain offer, but believes that his decision was wise given the applicant's slight chance of acquittal.

29. [Counsel] discussed the immigration consequences with the applicant before he entered his guilty plea.

30. The trial court's written plea admonishments contained the following warning regarding the risk of deportation:

**Citizenship:** If you are not a citizen of the United States of America, a plea of guilty or *nolo contendere* for this offense may result in deportation, the exclusion from admission to this country, or the denial of naturalization under federal law.

31. [Counsel] reviewed this admonishment with the applicant, and had him initial it.

32. [Counsel] further explained to the applicant that, due to being charged with a 3g offense, he should expect removal proceeding as an immigration consequence.

. . . .

43. The applicant was fully advised by [counsel] and by the trial judge regarding the immigration consequences of a guilty plea before he entered his guilty plea.

44. [Counsel] fully apprised the applicant of his legal options.

45. [Counsel's] writ hearing testimony and his affidavit attestations are credible.

46. [Counsel] provided the applicant with adequate representation as guaranteed by the Sixth Amendment.

. . . .

51. The applicant received effective assistance of counsel.

. . . .

CONCLUSIONS OF LAW

. . . .

13. [Counsel] fully advised the applicant regarding the risk of deportation, as required by *Padilla v. Kentucky*, including that he should expect removal proceedings as an immigration consequence of his guilty plea.

14. [Counsel] provided the applicant with adequate representation as guaranteed by the Sixth Amendment.

15. The trial judge specifically advised the applicant that he would have immigration consequences from his guilty plea.

16. The applicant was made aware that a guilty plea would result in deportation from the United States.

. . . .

28. The applicant received effective assistance of trial counsel.

[Citations omitted.]

**Standard of Review**

We review a trial court's denial of the relief requested in an application for a writ of habeas corpus under an abuse of discretion standard. *See Kniatt v.*

6

*State*, 206 S.W.3d 657, 664 (Tex. Crim. App.), *cert. denied*, 549 U.S. 1052 (2006). This means we view the record in the light most favorable to the trial court's ruling and afford great deference to its findings and conclusions, especially when they involve determinations of credibility and demeanor. *Ex parte Mello*, 355 S.W.3d 827, 832 (Tex. App.—Fort Worth 2011, pet. ref'd) (op. on PDR).

## Analysis

In *Padilla v. Kentucky*, the United States Supreme Court held that counsel's "advice regarding deportation is not categorically removed from the ambit of the Sixth Amendment right to counsel" and that the *Strickland* test for ineffectiveness applies to a claim that counsel's advice regarding the immigration consequences following a guilty plea was deficient. 559 U.S. 356, 366, 130 S. Ct. 1473, 1482 (2010). The court held that "[t]he weight of prevailing professional norms supports the view that counsel must advise [a] client regarding the risk of deportation." *Id.* at 367, 130 S. Ct. at 1482. In *Padilla*, as in this case, the relevant statutes were "succinct, clear, and explicit in defining the removal consequence"; thus, the Supreme Court concluded that Padilla's counsel had an equally clear duty to give Padilla correct advice regarding the immigration consequences of his guilty plea. *Id.* at 368–69, 130 S. Ct. at 1483.

Here, the trial court found appellant's counsel to be credible, in particular his testimony that he advised appellant before the guilty plea that a trial and acquittal would be the only way to avoid immigration consequences. Thus, the

7

trial court's conclusion that appellant was made aware that deportation would result from his guilty plea is supported by the record. *See Ex parte Obi*, No. 01-12-01003-CR, 2013 WL 4520936, at *5 (Tex. App.—Houston [1st Dist.] Aug. 27, 2013, no pet. h.). We conclude and hold that the trial judge did not abuse her discretion by determining that counsel's performance was not deficient under *Strickland*. *See id.*

## Conclusion

We affirm the trial court's order denying appellant's application for habeas relief under article 11.072 of the code of criminal procedure.

/s/ Terrie Livingston

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL: LIVINGSTON, C.J.; GARDNER and WALKER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: March 20, 2014

8