

In The

Court of Appeals

Seventh District of Texas at Amarillo

No. 07-22-00264-CR

EX PARTE DAVID WAYNE HAMPTON

On Appeal from the 137th District Court
Lubbock County, Texas
Trial Court No. DC-2022-CR-0919, Honorable John J. McClendon III, Presiding

June 27, 2023

MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.,

While appellant, David Wayne Hampton, was being tried for capital murder, the State asked four questions of different witnesses. The witnesses happened to be individuals with criminal backgrounds who knew appellant. The topic of inquiry concerned either how they knew him, how long they knew him, or why they selected him to engage in certain conduct. The ensuing answers indicated appellant had previously engaged in criminal conduct. Those answers garnered objections from appellant, which objections were sustained. In sustaining them, the trial court initially provided the jury with curative instructions. Yet, when the last question was answered and appellant objected and moved for mistrial, the trial court decided that curative instructions would no longer suffice.

So, it granted mistrial. That resulted in appellant filing his petition for habeas corpus to avoid retrial. He contended that double jeopardy barred his further prosecution. The trial court heard the petition and denied it. Appellant appealed. Through one issue, he asserts that denying mistrial constituted an act of abused discretion warranting reversal. We overrule the issue and affirm.

No one disputes that the standard of review is one of abused discretion. *See Constancio v. State*, No. 07-14-00335-CR, 2015 Tex. App. LEXIS 7154, at *6 (Tex. App. July 10, 2015, no pet.) (mem. op., not designated for publication); *see also Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006). Under it, we defer to the trial court's findings of historical fact but review de novo its application of law to those facts. *Wafer v. State*, 58 S.W.3d 138, 140 (Tex. App.—Amarillo Jan. 3, 2001, no pet.). So long as the decision falls within the zone of reasonable disagreement, it must be affirmed. *Id.* And, in applying that standard, we construe the factual record in a light most favoring the trial court's ruling. *Kniatt*, 206 S.W.3d at 664.

Next, double jeopardy normally does not bar retrial after a defendant's successful request for a mistrial. *Ex parte Wheeler*, 203 S.W.3d 317, 322 (Tex. Crim. 2006). It will, however, when the State, through its misconduct, intentionally goads or provokes the defendant into requesting it. *Id.* The prosecutor's state of mind and its assessment are all important since prosecutorial misconduct does not bar retrial "absent intent on the part of the prosecutor to subvert the protections afforded the Double Jeopardy Clause." *Constancio*, 2015 Tex. App. LEXIS 7154, at *7. "Is it a culpable one" indicative of an intentional "'deep-sixing'" of the defendant's chosen jury by an act of manifest impropriety or a reckless "'win at any cost'" act of manifest impropriety. *Ex parte Wheeler*, 203 S.W.3d at 323. That is what must be determined. And, various non-exclusive factors exist to aid

2

in the assessment. They include whether: 1) the misconduct was a reaction to abort a trial that was proceeding poorly for the State; 2) the misconduct was repeated despite admonitions from the trial court; 3) the prosecutor offered a reasonable, good faith explanation for the misconduct; 4) the misconduct clearly erroneous; 5) there was a legally or factually plausible basis for the misconduct despite its impropriety; and 6) the State's actions preceding mistrial were consistent with inadvertence, lack of judgment, or negligence or consistent with intentional or reckless misconduct. *Id.* at 323-24.

With the foregoing in our collective mind, we reiterate the deference to be afforded the trial court's factual determinations. The practical reason for doing so was best explained through the words of the trial court here:

> Well, I will say this, that – and you're right, things do move fast. And one of the things that everybody has to determine is not only what's said but how it's said, people's demeanor, the way – the inflection in their voice, all of those types of things, ***types of things that the Court of Appeals, quite frankly, never sees***. ***They just see words on pages.*** And the trial court's put in a position where they take into account all of those types of things, and that certainly will bear upon my decision as well.

(Emphasis added). Advancing steps in technology may one day allow a reviewing court to experience all things unfolding in a trial. When that happens, the need for deference may diminish. Yet, today is not that day.

Turning to the record, we encounter evidence of the trial court inviting counsel to join him in chambers once the final incident occurred. There, they conversed "about a decision that [the court] was pondering." The extent of that conversation is unclear since the reporter did not record it. Nevertheless, the trial court "[felt] like it's important" to mention the conversation in open court. And it did so at the hearing on appellant's request for a writ of habeas corpus.

3

In mentioning the conversation, the court said: "Mr. Johnson [appellant's trial counsel], you acknowledged that you said that the State hadn't committed any type prosecutorial conduct . . . ." Mr. Johnson agreed that he had done so. Moreover, excerpts from the actual trial confirms that. The excerpts to which we refer encompass the trial court's ruling on the motion for mistrial.

Upon reconvening the trial and prior to announcing its decision, the trial judge said: "I do make the finding that I don't think that anything was done by the State that was intentional, and I think even Defense would agree in regards to that." Defense counsel was then asked: "Is that correct, Counsel?" The latter replied with: "Yes, Your Honor. We – we totally degree – I'm sorry, agree, and we've had conversations between the two that we do not believe there was any kind of prosecutorial misconduct." To that, the trial court said: "Yeah, I don't – I don't believe so either." One can reasonably infer from this excerpt that the trial court cautiously, and rather astutely, garnered from counsel what can be interpreted as a stipulation of fact. After all, it constituted an agreement about inherently factual matters (i.e., the prosecutor's intent and conduct) by defense counsel during a judicial proceeding. *See Left Gate Prop. Holdings, Inc. v. Scott*, No. 01-10-00334-CV, 2011 Tex. App. LEXIS 2574, at *22-23 (Tex. App.—Houston [1st Dist.] Apr. 7, 2011, pet. denied) (mem. op.) (defining a stipulation as an agreement, admission, or other concession made in a judicial proceeding by the parties or their counsel); *see also Kuhel v. State*, No. 13-09-00180-CR, 2011 Tex. App. LEXIS 6922, at *5 (Tex. App.—Corpus Christi Aug. 25, 2011, no pet.) (mem. op., not designated for publication) (stating that stipulations are formal concessions with the effect of withdrawing a fact from issue and dispensing with the need for proof of the fact). Furthermore, being a stipulation by

4

defense counsel, it binds appellant given his lack of objection when made. *Genzel v. State*, 415 S.W.2d 919, 921-22 (Tex. Crim. App. 1967).

To that we add the prosecutor's explanation about not anticipating the answers given and the earlier admonishment of at least one witness against alluding to appellant's criminal background. Moreover, the questions themselves cannot be said to expressly invite allusion to prior criminal activity. How do you know someone, how long have you known someone, and why did you want to associate with someone can easily be answered without interjecting reference to crime. If this were not so, and if they somehow inherently risked inviting allusion to prior crimes, we could wonder why appellant's counsel failed to immediately object when they were asked.

In viewing the aforementioned circumstances and affording the requisite deference to the trial court's authority to interpret the evidence, we cannot say that it erred by refusing to find that the State goaded appellant into moving for mistrial. Again, even appellant and his counsel admitted that the prosecutor did not act intentionally or engage in any type of prosecutorial misconduct. So, double jeopardy stands as no bar to further prosecution of appellant.

We overrule appellant's sole issue and affirm the denial of appellant's application for writ of habeas corpus.

Brian Quinn
Chief Justice

Do not publish.

5