

# COURT OF APPEALS
# EIGHTH DISTRICT OF TEXAS
# EL PASO, TEXAS

---

No. 08-24-00015-CR

---

## EX PARTE JOAN SEBASTIAN PENA CORTES

---

On Appeal from the County Court
Kinney County, Texas
Trial Court No. 11945CR

---

## MEMORANDUM OPINION

Appellant Joan Sebastian Pena Cortes appeals from the trial court's order denying his pretrial application for writ of habeas corpus based on his claim that he was the subject of selective prosecution. For the following reasons, we affirm the trial court's order.

## I.   BACKGROUND

Pena Cortes, a noncitizen, was arrested for allegedly trespassing on private property in Kinney County, Texas in November 2021 as part of Operation Lone Star (OLS), the State's policy to address the influx of illegal border crossings from Mexico to Texas and "combat the smuggling

of people and drugs into Texas."[1]  He filed a pretrial application for a writ of habeas corpus in the county court, arguing the State was selectively prosecuting him in violation of his equal protection rights because the State was only arresting male noncitizens for alleged trespassing in a five-county area, including Kinney County, pursuant to the OLS policy in effect at the time of his arrest.

The county court denied relief without issuing a writ or holding a hearing, and Pena Cortes appealed to the Fourth Court of Appeals. The appeal was transferred to this Court pursuant to a Texas Supreme Court docket equalization order.[2]  In November 2023, we construed the appeal as a petition for writ of mandamus, denied the petition without prejudice, and remanded the matter to the county court.[3] We instructed the county court to consider Pena Cortes's writ application on remand in light of the Fourth Court of Appeals' opinion in *Ex parte Aparicio*. There, the Fourth Court held that Aparicio, a male noncitizen who was arrested pursuant to the OLS policy for allegedly trespassing, was the subject of selective prosecution and therefore entitled to habeas relief.[4] Following an evidentiary hearing, the trial court issued a second order in January 2024 denying Pena Cortes's writ application. Pena Cortes appealed from that order.[5]

In the interim, the Court of Criminal Appeals granted the State's petition for discretionary review of the Fourth Court of Appeals' opinion in *Aparicio*, and in February 2024, we abated Pena

---

[1]  *See Ex parte Aparicio*, 707 S.W.3d 189, 194 (Tex. Crim. App. 2024), *cert. denied sub nom. Aparicio v. Texas*, 145 S. Ct. 2852 (U.S. June 30, 2025) (No. 24-6057) (discussing the Governor's Office's stated purpose of OLS).

[2]  *See* Tex. R. App. P. 41.3 (requiring a transferee court to apply the precedent of the transferor court).

[3]  *Ex parte Pena-Cortes*, No. 08-23-00204-CR, 2023 WL 8285818, at *6 (Tex. App.—El Paso Nov. 30, 2023, no pet.) (mem. op., not designated for publication).

[4]  *Ex parte Aparicio*, 672 S.W.3d 696, 701 (Tex. App.—San Antonio 2023) *rev'd*, 707 S.W.3d 189 (Tex. Crim. App. 2024), *cert. denied sub nom. Aparicio v. Texas*, 145 S. Ct. 2852 (U.S. June 30, 2025) (No. 24-6057).

[5]  In its order denying the writ, the trial court concluded that although the State's OLS arrest policy had a discriminatory effect, the State did not engage in "purposeful discrimination." Instead, the trial court concluded, the State's arrest policy was motivated by the need to "immediately deal with the situation at hand during a state of emergency and disaster" at the border due to the "unprecedented number of illegal crossings of immigrants" and the limitations imposed by the lack of adequate jail space available to house arrestees.

Cortes's appeal pending that decision. In October 2024, the Court of Criminal Appeals reversed the Fourth Court of Appeals' decision in *Aparicio*.[6] In its opinion, the court first held that Aparicio's claim of selective prosecution was cognizable in a pretrial application for a writ of habeas corpus.[7] It then explained that "[i]n order to succeed in a claim of selective prosecution or selective enforcement, the claimant must prove with 'exceptionally clear evidence' that: 1. The prosecutorial policy had a discriminatory effect; and 2. it was motivated by a discriminatory purpose."[8]

The court assumed for the sake of argument that the first part of the prima facie case was met, as "the evidence adduced at trial demonstrated some level of a 'discriminatory effect' in that women were not prosecuted (at least under the State offense of criminal trespass)."[9] However, the court held that Aparicio had failed to present clear evidence demonstrating that the OLS policy of arresting only men for criminal trespass at the border was motivated by a discriminatory purpose.[10] The court held that the evidence presented in Aparicio's case—most of which consisted of the testimony of DPS Captain Betancourt, a prosecutorial liaison for Maverick County, and four DPS Troopers working with OLS in a five-county area—demonstrated that the State chose to arrest only men for trespassing in response to an "emergency" situation at the border caused by the influx of migrants and a lack of jail space to house those found trespassing at the border.[11] The court therefore determined that the OLS policy or "mindset" of arresting only men for trespass was

---

[6] *Ex parte Aparicio*, 707 S.W.3d at 210.

[7] *Id*. at 202–203.

[8] *Id.* at 204.

[9] *Id.* at 207–08.

[10] *Id.* at 208–210.

[11] *Id.*

"more likely" motivated by the "limited resources" the State had to address the "ongoing emergency" at the border "rather than gender discrimination."[12] According to the court, the evidence demonstrated "far more heavily that the necessities of reality during an ongoing emergency (limited resources in the face of 'sheer numbers'), rather than gender discrimination, was more likely the *motivation* for any discriminatory effect" (emphasis in original).[13] The court concluded that Aparicio had failed to meet his burden of "demonstrating a *prima facie* case that he [was] arrested and prosecuted *because* of his gender," and as such, did not meet the "'demanding' standard required for judicial interference in the State's discretion in administering criminal justice policy and priorities" (emphasis in original).[14]

Aparicio filed a petition for a writ of certiorari with the United States Supreme Court, and in January of 2025, we granted the State's motion to again abate the appeal until that petition was resolved. After the high court denied certiorari, declining to review the Court of Criminal Appeals' opinion in *Aparicio*, we reinstated Pena Cortes's appeal to consider the trial court's ruling.

## II. STANDARD OF REVIEW

We generally review a trial court's ruling on a pretrial application for writ of habeas corpus under an abuse-of-discretion standard. *See Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006); *Ex parte Jarreau*, 623 S.W.3d 468, 472 (Tex. App.—San Antonio 2020, pet. ref'd). But "when, as here, the resolution of the ultimate issue turns on the application of purely legal standards, we review the trial court's ruling de novo." *Jarreau*, 623 S.W.3d at 472. Further, we must uphold the trial court's ruling if it "was supported by the record and was correct under any

---

[12] *Id.* at 210.

[13] *Id.* at 209–210.

[14] *Id.*

4

theory of law applicable to the case[,] . . . even if the trial court gave the wrong reason for its ruling." *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003) (en banc) (citing *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000) (en banc); *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990) (en banc)); *see also Ex parte Guerrero*, No. 04-24-00583-CR, 2025 WL 2399174, at *1 (Tex. App.—San Antonio Aug. 19, 2025, no pet.) (per curiam) (mem. op., not designated for publication).

## III. DISCUSSION

On appeal, Pena Cortes acknowledges that in *Aparicio,* the Court of Criminal Appeals held that Aparicio, who had been arrested under the same OLS policy, failed to establish he was the victim of selective prosecution based on the record before the trial court. However, Pena Cortes contends the record in his case contains additional evidence that was not included in Aparicio's case, i.e., an affidavit from Victor Escalon, the South Texas Regional Director of the Texas Department of Public Safety responsible for initially overseeing the OLS operations for the South Texas Region, which included Kinney County. And, he contends, Escalon's affidavit provided "exceptionally clear evidence" the court found lacking in Aparicio's case to establish a prima facie case of the State's discriminatory motive in arresting only males for trespassing at the border.

In his affidavit, Escalon averred that, as part of the OLS operations, "[o]n or about August 2021, DPS personnel were directed [by DPS leadership] not to arrest females for criminal trespass."[15] He further averred that at the same time, DPS leadership "focused arrests on males between the ages of 18–65 (['])non-elderly adult males['])."

---

[15] Escalon averred that this practice changed in November 2022 when DPS personal began arresting females in various border counties for criminal trespass. This change occurred after Pena Cortes was arrested for criminal trespass.

Escalon explained that DPS considered several factors in making this decision. The factors he cited were substantially similar to those the State offered in Aparicio's case to justify the decision, i.e., related to limited resources available to combat the emergency situation at the border. But Pena Cortes finds it significant that Escalon also averred that the policy was adopted in part based on the State's belief that "non-elderly adult male trespassers" (between the ages of 18 and 65) posed a "greater public safety threat" than female trespassers, and that "[i]n the West Texas Region, DPS personnel have regularly encountered mostly males transporting controlled substances in heavy backpacks."

Pena Cortes further points to Escalon's comparisons between male and female trespassers in his affidavit. First, Escalon stated that, based on his experience as the South Texas Regional Director and his "past experience with border operations," he has "observed that primarily single adult males and male drug smugglers move through desolate rural areas to avoid detection and capture," while female trespassers and those in family units "identify locations to cross where the city provides more infrastructure on both sides of the river." Second, Escalon observed that, in his experience, "DPS personnel who encountered females on private property could not easily distinguish between those who were also trespassing and those who were being smuggled or trafficked by their male companions," and "[t]o avoid potentially arresting female trafficking or smuggling victims, DPS personnel focused on arresting non-elderly adult male trespassers, especially since jail capacity has been limited."[16]

According to Pena Cortes, the evidence showed the State was openly discriminating against males based on their alleged propensity to be more "dangerous" and more likely to engage in

---

[16] In addition, Pena Cortes maintains that the State's arresting of females in Kinney County after the litigation over the State's OLS policy began shows the State's claim that it only arrested male trespassers due to limited jail space "was not the actual reason driving the discriminatory treatment[.]"

6

criminal conduct than females, who the State believed were more likely to be "victims." And, he contends, Escalon's affidavit demonstrates that the State was openly considering "gender" in its OLS policies and engaging in "prejudice" and gender "stereotyping" by only arresting males at the border. The affidavit, according to Pena Cortes, constituted clear proof that the State's OLS policy constituted the type of "invidious" discrimination that the court in *Aparicio* recognized was impermissible. *See Aparicio*, 707 S.W.3d at 205–06 (noting that Black's Law Dictionary "defines 'invidious discrimination' as: 'Discrimination that is offensive or objectionable, esp. because it involves prejudice or stereotyping.'").

We agree with the State that the affidavit is not substantially different than the evidence the Court of Criminal Appeals examined in *Aparicio* or this Court examined in the various other post-*Aparicio* cases, which was found insufficient to establish a prima facie case of discrimination. [17] Though Escalon acknowledged that the State focused on arresting male trespassers because they posed a "greater public safety threat" than females, he also explained that the State's *purpose* in only arresting men was motivated by the limited resources available to address the ongoing emergency at the border, adding that the lack of jail space was exacerbated by the COVID-19 pandemic in 2021 and 2022. [18] Noting the Texas Jail Standards requiring men and women to be housed separately, Escalon further explained that "[i]n the West Texas Region, DPS personnel have regularly encountered mostly males transporting controlled substances in

---

[17] *See, e.g.*, *Ex parte Melo-Sanchez*, No. 08-23-00301-CR, 2025 WL 2778133, at *2 (Tex. App.—El Paso Sept. 29, 2025, no pet.) (affirming trial court's decision denying defendant's application for a writ of habeas corpus where the defendant presented substantially the same evidence that the Court of Criminal Appeals found insufficient to support a prima facie case of gender discrimination in *Aparicio*).

[18] Escalon further explained that the public safety threat posed by trespassers consisted not only of the damage the trespassers inflicted on private property at the border, but the dangers the trespassers themselves faced, noting that "[m]any of them have died from dehydration, exhaustion, and other ailments while traversing rural and remote land, especially in hot temperatures . . . . Most of them have been male."

7

heavy backpacks." Escalon believed the State's initial decision to arrest only men was a "practical" necessity in light of the limited jail space. Moreover, Escalon had "been working with State and Federal OLS partners to increase jail space capacity, including to house more female arrestees" since July 2021.

We conclude that Escalon's explanation for the State's purpose in adopting its OLS arrest policy was substantially similar to the explanation the State's witnesses provided in *Aparicio*, i.e., allocating limited resources available to address the ongoing emergency situation at the border. Escalon's affidavit did not establish that the State's policy was motivated by an invidious discriminatory purpose, i.e., "with a mind so unequal and oppressive that the system of prosecution amounts to a practical denial of equal protection of the law." *Id.* at 204, 206 (internal quotation marks omitted).[19]

Like Aparicio, Pena Cortes failed to establish a prima facie case that he was unlawfully arrested and prosecuted because of his gender. We therefore conclude that the trial court acted properly in denying Pena Cortes's application for a pretrial writ of habeas corpus.

---

[19] We further note that although not addressed extensively, other courts, including the Fourth Court of Appeals, whose precedent we must follow, have rejected claims of gender discrimination in post-*Aparicio* cases in which defendants have presented Escalon's affidavit in support of their claims. *See, e.g.*, *Ex parte Lopez*, No. 05-24-00082-CR, 2025 WL 2880829, at *3–4 (Tex. App.—Dallas Oct. 9, 2025, no pet.) (mem. op., not designated for publication) (concluding that Escalon's affidavit was substantially similar to the evidence presented in Aparicio's case and did not support a finding that the State had engaged in gender discrimination in its OLS arrest policies); *Ex parte Sanchez Dubon*, No. 04-24-00584-CR, 2025 WL 2399175, at *1–2 (Tex. App.—San Antonio Aug. 19, 2025, no pet.) (per curiam) (mem. op., not designated for publication); *Ex parte Guerrero*, No. 04-24-00583-CR, 2025 WL 2399174, at *1–2 (Tex. App.—San Antonio Aug. 19, 2025, no pet.) (per curiam) (mem. op., not designated for publication).

## IV.  CONCLUSION

We affirm the trial court's judgment denying Pena Cortes's application for a pretrial writ of habeas corpus, and we remand this matter to the trial court for further proceedings in accordance with our opinion. All pending motions are denied as moot.

LISA J. SOTO, Justice

December 19, 2025

Before Salas Mendoza C.J., Palafox and Soto, JJ.

(Do Not Publish)