**AFFIRMED and Opinion Filed January 31, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-01223-CR

### EX PARTE RODOLFO RAMOS

**On Appeal from the County Court at Law No. 4**
**Collin County, Texas**
**Trial Court Cause No. 004-84988-2011**

## MEMORANDUM OPINION
Before Justices FitzGerald, Lang, and Fillmore
Opinion by Justice Lang

Rodolfo Ramos appeals the trial court's order denying his application for writ of habeas corpus. In two issues, appellant contends his acknowledgment of the admonition to noncitizens in his plea papers did not satisfy his attorney's obligation to advise him about the immigration consequences of his plea under *Padilla v. Kentucky* and he was prejudiced by trial counsel's failure to advise him properly. We affirm.

### BACKGROUND

Appellant is a citizen of El Salvador who was granted Temporary Protected Status ("TPS" hereinafter) to live and work in the United States. *See* 8 U.S.C.A. §1254a (West 2005) (granting the right to live and work in the United States to citizens of designated countries afflicted by war, natural disaster, or extraordinary and temporary conditions). In 2004, appellant was convicted of the misdemeanor offense of driving while intoxicated. On May 28, 2011,

appellant was again arrested and charged with a second offense of misdemeanor driving while intoxicated. An alien who is convicted of two misdemeanors is not eligible for TPS. *See id*. at §1254a(c)(2)(B)(i), (3)(A).

Appellant retained trial counsel to represent him on the 2011 DWI case. On September 16, 2011, appellant entered a negotiated guilty plea to the offense and the trial court assessed punishment at ninety days' confinement and a $500 fine. In connection with his guilty plea, appellant received written admonishments from the trial court stating that his plea "could have serious immigration consequences, including, but not limited to, deportation, denial of naturalization under federal law and exclusion from admission to this country."

In 2012, appellant applied to re-register for TPS. In response, the Department of Homeland Security ("DHS") notified appellant that it intended to deny renewal of his status and withdraw his TPS. DHS gave appellant thirty-three days to submit "evidence of the final dispositions" of his two arrests for DWI. Appellant did not submit the documents from his criminal cases as directed. Instead, he submitted an affidavit and letter from habeas counsel asserting appellant's second conviction was constitutionally flawed. DHS then withdrew appellant's TPS on the ground he failed to provide the requested documentation.

Appellant filed the instant application for writ of habeas corpus alleging trial counsel provided ineffective assistance by advising him that he would not suffer adverse immigration consequences by entering a guilty plea when, in fact, the plea would make him ineligible for TPS and result in his deportation from the United States. In his affidavit supporting the application, appellant stated trial counsel had advised him that if he pleaded guilty he would spend "a month or two in jail" and he would then be deported because he had no papers. When appellant informed trial counsel that he, in fact, had "papers," trial counsel assured him that he would not

have a problem with immigration. Appellant averred he would have demanded a jury trial had he been aware of the actual consequences of his guilty plea.

The trial court conducted a hearing on appellant's writ application. During his testimony at the writ hearing, appellant related a slightly different version of trial counsel's advice:

> He told me that they were going to give me four days of jail or more, and that if I went to jail for just four days, that nothing was going to happen to me. But if I was in jail for more than four days, that they were going to deport me. He asked me if I had any documentation, and I told him I had the TPS. And so, then he said, "Well, then there's no problem."

Appellant testified trial counsel did not go over the plea papers with him and he could not understand them because he does not comprehend English. Appellant testified he spent three days in jail and was then released. The correspondence between appellant and DHS regarding renewal of his TPS was admitted into evidence.

Trial counsel submitted an affidavit and testified at the writ hearing. In both his affidavit and testimony, trial counsel related he could not recollect what advice he delivered to appellant. Trial counsel related that it was his usual practice to ascertain whether a client was a citizen but he did not always inquire as to the basis for their legal status in the United States. Trial counsel represented he would have gone over the trial court's admonition to appellant about possible deportation and he would have explained the plea papers to appellant in Spanish. Trial counsel admitted he was unaware a second misdemeanor conviction would make appellant ineligible for TPS. Trial counsel doubted that he expressed any opinion about TPS at all, describing immigration law in both his affidavit and his testimony as "a complicated area."

Trial counsel testified he advised appellant to accept the State's offered plea bargain because he did not "see any reasonable likelihood of winning the case." Counsel described appellant's case as "the type of case that if we try it ten times, we'll probably lose it ten times." The evidence against appellant, briefly discussed in the writ hearing, included a police report

showing appellant's blood alcohol concentration was .188. The report further states appellant failed field sobriety tests, exhibiting six of six clues on the horizontal gaze nystagmus test, five out of eight clues on the walk-and-turn test, and two of eight clues on the one-leg stand test.[1]

Although trial counsel could not state exactly what he discussed with appellant, he described his typical advice to a deportable client facing near certain conviction as:

> if the inevitable is, you can either take the deal or you can go to trial—you can pay a bunch of money to have a trial and then get convicted and even get a worse deal, the immigration consequences are going to be the same whether you have a trial—whether you spend a bunch of money to have a trial and get convicted and get a worse deal, or whether you take a plea deal and get a better deal. If it's inevitable that you're going to be convicted or highly likely, I'd tell any of them that, "Look, I understand it may be a problem for your immigration matter, but this is inevitable. This is going to happen one way or the other." And I'll leave it up to them. "You can either pay me to go to the trial, or we can take the deal. The result is going to be the same, or worse by going to trial."

Trial counsel opined appellant's plea was entered voluntarily because he would have left to appellant the decision whether to take the plea or go to trial. Regarding appellant's assertion that he told appellant there would be no immigration consequence to the plea, trial counsel testified he "would never say that." Trial counsel agreed he is not an expert on immigration law and that if he knew a client had a basis for remaining in the country but would be subject to removal if he was convicted, he would try to negotiate a deal that would not necessarily be a deportable offense to allow the client to remain in the country.

### APPLICABLE LAW

An applicant for habeas corpus relief must prove his claim by a preponderance of the evidence. *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006); *Ex parte Scott*, 190 S.W.3d 672, 673 (Tex. Crim. App. 2006) (per curiam). In reviewing the trial court's order denying habeas corpus relief, we view the facts in the light most favorable to the trial court's

---

[1] Although the prosecutor describes the police report as "State's Exhibit Number 2," it was not entered into evidence during the hearing.

ruling. *See Kniatt*, 206 S.W.3d at 664. We will uphold the trial court's ruling absent an abuse of discretion. *See id.* We afford almost total deference to the trial court's determination of the historical facts that the record supports. *See Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex. Crim. App. 2003) (per curiam), *overruled on other grounds by Ex parte Lewis*, 219 S.W.3d 335 (Tex. Crim. App. 2007). We likewise defer to the trial court's application of the law to the facts, if the resolution of the ultimate question turns on an evaluation of credibility and demeanor. *See id.* If the resolution of the ultimate question turns on an application of legal standards, we review the determination de novo. *See id*. This deferential review applies even if the trial court's findings are implied rather than explicit and based on affidavits rather than live testimony. *See Ex parte Wheeler*, 203 S.W.3d 317, 325–26 (Tex. Crim. App. 2006).

To show he received ineffective assistance of counsel, appellant must show (1) counsel's performance fell below an objective standard of reasonableness; and (2) a reasonable probability exists that, but for counsel's errors, the result would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984). In the context of a complaint about counsel's plea advice, appellant must show (1) counsel's plea advice did not fall within the wide range of competence demanded of attorneys in criminal cases and (2) there is a reasonable probability that, but for counsel's deficient performance, appellant would have insisted on going to trial rather than accepting the offer and pleading guilty. *Ex parte Harrington,* 310 S.W.3d 452, 458 (Tex. Crim. App. 2010). Appellant bears the burden of proving counsel was ineffective by a preponderance of the evidence. *Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011).

Inaccurate advice regarding a non-citizen defendant's prospective deportation may constitute ineffective assistance. *See Padilla v. Kentucky*, 559 U.S. 356, 366 (2010). When the consequences are "not succinct and straightforward," counsel's duty is to advise the defendant of

the possibility that the plea may carry a risk of adverse immigration consequences. *Id*. at 369. When, however, federal immigration law clearly specifies that the defendant will be deported, counsel must affirmatively and correctly advise the defendant about immigration consequences of the plea. *Id*.

If counsel fails to give the correct advice, thus satisfying the first prong of the test, then appellant satisfies the second prong by showing that had he been aware of the immigration consequences, a decision to reject the plea bargain offered and proceed to trial would have been rational under the circumstances. *Id*. at 372.

## ANALYSIS

In his first issue, appellant contends he meets the first prong of *Strickland* because trial counsel failed to advise him that he would lose his TPS and face automatic deportation if he entered a guilty plea to the offense even though immigration law clearly specified that result. The State argues trial counsel's advice was correct because it was not clear what deportation risk appellant faced. The State points out that while appellant became ineligible for TPS upon conviction of a second misdemeanor, the DHS regulations that govern the actual withdrawal of TPS state the agency "may withdraw the status of an alien granted Temporary Protected Status" if, among other grounds, the alien "becomes ineligible for such status" or the alien fails to register annually. *See* 8 C.F.R. § 244.14(a) (2014). The regulations further provide that withdrawal of an alien's status "may subject the applicant to exclusion or deportation proceedings. . . ." *See id*. at § 244.14(b)(2). Thus, the State argues, the use of the word "may" instead of "shall" indicates the deportation risk appellant faces is not mandatory deportation as in *Padilla*. The State further points out that appellant's TPS was not withdrawn because he received two misdemeanor convictions but rather because he failed to provide requested documentation of his convictions to DHS as directed.

*Padilla* requires counsel to advise a deportable client that he or she will be deported if deportation is a clear consequence of entering a plea. *See Padilla*, 559 U.S. at 369. *Padilla* does not delineate how far into the waters of immigration law trial counsel is required to wade. *Padilla* does, however, acknowledge that immigration law is a legal specialty, can be complex, and concedes there will be numerous situations in which the law is not "succinct and straightforward." *Id*.

In this case, the TPS statute provides that an alien shall not be eligible for TPS if the Attorney General finds that the alien has been convicted of any felony or two or more misdemeanors committed in the United States. 8 U.S.C.A. §1254a(c)(2)(B). Further, the TPS statute provides the Attorney General shall withdraw TPS granted to an alien if the Attorney General finds the alien was not in fact eligible for that status. *Id*. §1254a(c)(3)(A). However, the DHS has promulgated regulations implementing the TPS statute which appear to give the United States Citizenship and Immigration Services, a component of the DHS, enforcement discretion with respect to the withdrawal of an alien's TPS:

> (a) Authority of USCIS. USCIS *may* withdraw the status of an alien granted Temporary Protected Status under section 244 of the Act at any time upon the occurrence of any of the following:
> (1) The alien was not in fact eligible at the time such status was granted, or at any time thereafter becomes ineligible for such status;

8 C.F.R. §244.14 (emphasis added).[2] *See also Mejia Rodriguez v. U.S. Dept. of Homeland Sec.*, 562 F.3d 1137, 1143–44 (11th Cir. 2009) (holding for purposes of federal court jurisdictional analysis that preliminary eligibility decisions for TPS applications are nondiscretionary but ultimate decision to grant or deny TPS is discretionary).

---

[2] Whether the DHS regulation suggests more enforcement discretion than is authorized by the TPS statute is a question we need not address in this appeal.

The agency enforcement discretion as to TPS results in uncertainty in any given case as to whether, or how, the agency's discretion will be exercised. Accordingly, we cannot conclude the law on this subject is so "succinct and straightforward" that a duty arises under *Padilla* requiring trial counsel to inform appellant concerning the effect of his plea upon enforcement of the TPS statute. Accordingly, appellant has not shown his circumstances involve the degree of certainty the defendant in *Padilla* faced, and without such a showing, we cannot conclude appellant met his burden of proof to show trial counsel was ineffective. *See Martinez*, 330 S.W.3d at 901. We overrule appellant's first issue.

In his second issue, appellant contends he showed sufficient prejudice to meet the second *Strickland* prong. Appellant contends he would not have exchanged his right to a jury trial for a plea bargain that he knew would "inevitably destroy his right to remain and work in the United States." Appellant contends he "would prefer the possibility of additional time in jail to the certainty of misery as an agricultural laborer in El Salvador, despite the strong evidence that will be available to the State if he goes to trial." At the very least, appellant contends, if he had understood the consequences he could have pushed for a better plea bargain that would not result in his deportation.

The State responds appellant was not prejudiced by trial counsel's deportation advice. The State notes there is no evidence appellant would have rejected the plea bargain other than his own testimony which the trial court was free to disbelieve. The State contends appellant's testimony was not credible because his testimony contradicted his affidavit regarding what advice he received from counsel and he claimed not to remember what he told trial counsel regarding his immigration status and whether his TPS had been withdrawn. The State further points to trial counsel's testimony about the merits of the case as showing it would not have been rational for appellant to reject the plea bargain and proceed to trial.

Appellant had the burden to prove, by a preponderance of the evidence, that there is a reasonable probability that, but for counsel's advice, he would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *Ex parte Harrington*, 310 S.W.3d at 458. He "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla*, 559 U.S. at 372 (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 480, 486 (2000)). "The test is objective; it turns on what a reasonable person in the defendant's shoes would do." *United States v. Smith*, 844 F.2d 203, 209 (5th Cir. 1988) (per curiam) (citing *Hill*, 474 U.S. at 59–60); *see also Ex parte Ali*, 368 S.W.3d 827, 835 (Tex. App.—Austin 2012, pet. ref'd).

The trial court heard evidence showing appellant's blood alcohol content was .188, he had failed field sobriety testing, and the case was, in trial counsel's judgment, unwinnable. Against that evidence, appellant presented only his bare assertion that he would have chosen to take the case to trial. If appellant had rejected the plea offer, gone to trial, and been convicted, which according to counsel was virtually certain, he would have risked the same deportation consequences as he did when taking the plea offer. In light of this and other evidence, the trial court could have reasonably concluded that it would not have been rational under the circumstances for appellant to reject the plea offer and go to trial. *See Ex parte Ali*, 368 S.W.3d at 840; *see also Hill*, 474 U.S. at 59–60 (explaining that prejudice inquiry in plea-bargain cases includes examination of likelihood of success at trial); *Pilla v. United States*, 668 F.3d 368, 373 (6th Cir. 2012) (considering "overwhelming evidence of guilt" in concluding that "no rational defendant in [applicant's] position would have proceeded to trial).

Appellant further contends if he had understood the consequences of a guilty plea, he would have bargained for a better deal from the State. Appellant presents no evidence that a better plea bargain was possible. From the discussion on the record, the State's case would

appear to be formidable. Placement on deferred adjudication would not affect appellant's deportation risk because deferred adjudication is treated as a conviction for purposes of federal immigration law if the defendant enters a guilty or no-contest plea and punishment is assessed. *See* 8 U.S.C.A. §1101(a)(48)(A) (West 2005) (defining an order of deferred adjudication as a conviction for purposes of application of federal immigration law). In the absence of any evidence in the record, we decline to speculate whether appellant could have negotiated a plea bargain that would have avoided his deportation.[3]

We conclude the trial court would have acted within its discretion in concluding appellant could not meet his burden to show prejudice from trial counsel's advice. *See Padilla*, 559 U.S. at 372; *Ex parte Moreno*, 382 S.W.3d 523, 530 (Tex. App.—Fort Worth 2012, pet. ref'd) (deferential standard of review mandated support for trial court's judgment call that habeas applicant failed to prove he would not have pleaded guilty but for trial counsel's allegedly deficient conduct); *Ex parte Ali*, 368 S.W.3d at 840–41 (concluding applicant failed to show prejudice from trial counsel's allegedly defective advice regarding immigration consequences of plea). We overrule appellant's second issue.

Finding no abuse of discretion, we affirm the trial court's order denying appellant's application for writ of habeas corpus.

Do Not Publish

TEX. R. APP. P. 47

131223F.U05

/Douglas S. Lang/

DOUGLAS S. LANG

JUSTICE

---

[3] On appeal, appellant also contends that if he returned to El Salvador, he faces an arduous life as an agricultural laborer. No evidence about appellant's prospects in El Salvador was presented to the trial court. Assertions in appellant's brief not supported by record evidence will not be considered on appeal. *Franklin v. State*, 693 S.W.2d 420, 431 (Tex. Crim. App. 1985).



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

EX PARTE RODOLFO RAMOS

No. 05-13-01223-CR

On Appeal from the County Court at Law No. 4, Collin County, Texas
Trial Court Cause No. 004-84988-2011.
Opinion delivered by Justice Lang. Justices FitzGerald and Fillmore participating.

Based on the Court's opinion of this date, the trial court's order denying appellant's application for writ of habeas corpus is **AFFIRMED**.

Judgment entered this 31st day of January, 2014.

/Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE