**AFFIRMED and Opinion Filed September 23, 2020**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-19-01237-CR

## EX PARTE ANTONIO CAMPOZANO JR.

**On Appeal from the 282nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. WX19-90309-S**

## OPINION

Before Justices Schenck, Osborne, and Reichek
Opinion by Justice Reichek

Antonio Campozano Jr. appeals the trial court's order denying relief on his pretrial application for writ of habeas corpus. Appellant contends the trial court misapplied the limitations statute and concluded incorrectly that the indictment against him is not time barred. Finding no error, we affirm.

### BACKGROUND

The parties do not dispute the facts of this case. The alleged aggravated sexual assault occurred on November 18, 2000. The complainant did not know her assailant but described him to police as a thirty-to-forty-year-old Latino male driving a light-colored pickup truck. The complainant underwent a sexual assault examination

during which biological material was recovered. The complainant offered no further cooperation, and police suspended the investigation.

In January 2001, serology testing on the biological material detected the presence of seminal fluid and spermatozoa. Because the complainant was not cooperating, police closed the case without ordering DNA testing. In August 2001, appellant's DNA profile was uploaded to the CODIS database.[1]

In 2015, the biological material was submitted to a laboratory for DNA testing. On April 28, 2017, the laboratory produced a report showing one of the tested items contained DNA that was a mixture from the complainant and a male contributor. In 2017, the DNA profile was uploaded into CODIS. On June 26, 2018, the Dallas Police Department was notified that appellant's DNA sample on file matched the DNA from the male contributor.

Because of the CODIS match, the case was reopened and a new detective was assigned to the investigation. Appellant was indicted on October 26, 2018. Confirmatory DNA testing was performed in 2019. Appellant then sought pretrial habeas relief arguing that the statute of limitations for the offense was ten years under article 12.01 of the code of criminal procedure and the State's prosecution was time barred. *See* TEX. CODE CRIM. PROC. ANN. art. 12.01(2)(E).

---

[1] CODIS is an acronym for the FBI's Combined DNA Index System. *See* TEX. GOV'T CODE ANN. § 11.141(1). It is a database containing the DNA profiles of criminal offenders. *Jenkins v. State*, 493 S.W.3d 583, 592 n.8 (Tex. Crim. App. 2016).

After conducting an evidentiary hearing during which the investigating detective testified and documents related to the investigation and DNA testing were admitted into evidence, the trial court concluded that because appellant's identity could not be "readily ascertained" prior to the June 26, 2018 CODIS match, there was no limitations period for the offense under code of criminal procedure article 12.01, which governs limitations periods. *See* TEX. CODE CRIM. PROC. ANN. art. 12.01. On appeal, appellant challenges the trial court's application of article 12.01.

### STANDARD OF REVIEW

A defendant may file a pretrial application for writ of habeas corpus to request relief on the ground the prosecution is barred by the statute of limitations. *See Ex parte Smith*, 178 S.W.3d 797, 802 (Tex. Crim. App. 2005). Habeas applicants must prove their claims by a preponderance of the evidence. *See Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006). In reviewing a trial court order denying habeas relief, we view the facts in the light most favorable to the trial court's ruling, and we uphold the ruling absent an abuse of discretion. *Id*. The trial court, as fact finder, is the exclusive judge of witness credibility. *Ex parte Amezquita*, 223 S.W.3d 363, 367 (Tex. Crim. App. 2006). We afford almost total deference to a trial court's factual findings when the findings are based upon credibility and demeanor. *Id*. If, however, the trial court's determinations are questions of law, or else are mixed questions of law and fact that do not turn on an evaluation of witness credibility and

demeanor, then we owe no deference to the trial court's determinations and review them de novo. *State v. Ambrose*, 487 S.W.3d 587, 596–97 (Tex. Crim. App. 2016).

**ANALYSIS**

In his sole issue on appeal, appellant contends the trial court did not properly apply the plain words of the applicable version of article 12.01. The construction of statutes is a matter of law that we review de novo. *Harris v. State*, 359 S.W.3d 625, 629 (Tex. Crim. App. 2011). We construe statutes of limitations strictly against the State and liberally in favor of the defendant. *Ex parte Lovings*, 480 S.W.3d 106, 111 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

When a statute is clear and unambiguous, we may not add or subtract from the language of the statute but rather give effect to what the legislature has expressed. *See Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991). We construe the words in the statute according to the rules of grammar and common usage and read them in context. TEX. GOV'T CODE ANN. § 311.011(a); *Harris*, 359 S.W.3d at 629. We presume every word has a purpose and that each word, phrase, clause, and sentence should be given effect, if reasonably possible. *Boykin*, 818 S.W.2d at 785. We may consult extra-textual sources only if the statutory language is ambiguous or leads to absurd results that the legislature could not have possibly intended. *Harris*, 359 S.W.3d at 629.

*The Statute*

We begin our analysis by considering the language of the statute. The applicable version of article 12.01 describes several categories of offenses for which there is no limitations period. Under this provision, sexual assault has no limitations period "if during the investigation of the offense biological matter is collected and subjected to forensic DNA testing and the testing results show that the matter does not match the victim or any other person whose identity is readily ascertained." *See* Act of April 4, 2001, 77th Leg., R.S., ch. 12, §1, 2001 Tex. Gen. Laws 20, 20 (amended) (current version at TEX. CODE CRIM. PROC. ANN. art. 12.01(1)(C)).[2] Although the limitations statute refers expressly only to sexual assault, it applies equally to aggravated sexual assault. *See* TEX. CODE CRIM. PROC. ANN. art. 12.03(d) (subjecting aggravated version of offense to same limitations period as primary offense); *see also Ex parte Montgomery*, No. 14-17-00025-CR, 2017 WL 3271088, at *3 (Tex. App.—Houston [14th Dist.] Aug. 1, 2017, pet. ref'd) (mem. op., not designated for publication) (aggravated sexual assault and sexual assault have same

---

[2] The language we quote was added in 2001 and codified as article 12.01(1)(B). The amendment was made retroactive to all cases not already time-barred. *See* Act of April 4, 2001, 77th Leg., R.S., ch. 12, §2, 2001 Tex. Gen. Laws 20, 20–21. The statute was amended in 2007 to designate the provision as article 12.01(1)(C). *See* The Jessica Lunsford Act, 80th Leg., R.S., ch. 593, §1.03, 2007 Tex. Gen. Laws 1120, 1120–21 (codified as TEX. CODE CRIM. PROC. ANN. art. 12.01(1)(C)). The amendment was made retroactive to any pending cases not already time barred. *See id.* ch. 593, §4.01(c), 2007 Tex. Gen. Laws at 1148. The substance of the provision did not change until passage of The Lavinia Masters Act in 2019. *See* The Lavinia Masters Act, 86th Leg., R.S., ch. 408, §2, 2019 Tex. Sess. Law Serv. Ch. 408 (H.B. 8) (current version at TEX. CODE CRIM. PROC. ANN. art. 12.01(1)(C)). The revised language set forth in The Lavinia Masters Act is also retroactive to all cases not barred by limitations. *See id*. at ch. 408, §12. Because the issue is whether the case was barred by limitations after ten years, the relevant language is the language we have quoted, which was in effect between 2001 and 2019 and is thus applicable to this case.

limitations period). For cases of sexual assault that do not meet the requirements to be treated as having no limitations, the statute of limitations for aggravated sexual assault is ten years. *See* TEX. CODE CRIM. PROC. ANN. arts. 12.01(2)(E), 12.03(d).

The parties agree the "no limitation" provision of the applicable former statute established three required prongs. *See Ex parte Edwards*, No. 01-19-00100-CR, 2020 WL 4457985, at *5 (Tex. App.—Houston [1st Dist.] Aug. 4, 2020, no pet. h.) (op. on reh'g); *Ex parte S.B.M.*, 467 S.W.3d 715, 719 (Tex. App.—Fort Worth 2015, no pet.). The parties further agree that the record establishes the State has met the first prong by recovering biological material during the investigation of the offense. The parties disagree about whether this case qualifies for unlimited limitations under the other two prongs.

*Second Prong: The Timing and Adequacy of DNA Testing*

A. Timing of DNA Testing

The second prong requires that the biological evidence that was collected be "subjected to DNA testing." Appellant first contends that a plain reading of the statute requires the DNA testing must occur within ten years to trigger the unlimited limitations provision. Because it is undisputed the DNA testing did not occur within ten years, appellant contends the State cannot meet the second prong of the statute.

Appellant concedes that the Fourteenth District Court of Appeals has issued an opinion that directly contradicts his assertion. Appellant contends, however, that changes to the statute made in the 2019 legislative session support his position, and

that two cases decided after the changes indicate appellate courts accept that all three of the statutory prongs must be satisfied within ten years to trigger the unlimited-limitations exception. The State responds that the plain language of the statute does not impose any temporal limits on the DNA testing.

Because they are central to the analysis, we begin our discussion with two cases from the Fourteenth Court of Appeals. In *Ex parte Lovings*, the court considered whether limitations had run on a 1998 sexual assault when DNA testing was conducted in 2004, a CODIS match with the defendant was made in 2013, and the defendant was indicted in 2014. *See Lovings*, 480 S.W.3d at 108. The defendant sought pretrial habeas relief, arguing limitations had run because the investigation required by the statute was closed in 1998 and not reopened until more than ten years later in 2013. *Id*. at 111. In rejecting this contention, the court reasoned that the statute did not include any modifiers such as "open," "active," or "ongoing" for the word "investigation" and did not impose any temporal limitations on the length of the investigation. *Id*. at 111–12.

Subsequently, in *Montgomery*, the Fourteenth Court issued an unpublished opinion that appellant concedes is contrary to his position. The victim was sexually assaulted in 1989, but police did not request DNA testing on recovered biological evidence until 2012. *See Montgomery*, 2017 WL 3271088, at *1. After testing was completed and the DNA results were matched to the defendant by CODIS, the State indicted the defendant in 2015. *Id*.

The defendant applied for pretrial habeas relief contending, among other things, that limitations expired before the State requested DNA testing on the recovered biological material. *Id.* at \*2. In rejecting the defendant's position, the court relied upon *Lovings* to conclude that the applicable version of article 12.01 does not include any temporal limits on DNA testing just as it includes no limits on investigations. *Id.* at \*3. The court concluded: "We would have to insert language into article 12.01(1)(C) to say there is no limitations period for sexual assault 'if, during the investigation *and before the expiration of the limitations period* biological matter is collected and subjected to forensic DNA testing . . . .' Just as in *Lovings*, we will not rewrite the statute." *Id.* at \*4.

Although *Montgomery* is an unpublished decision and has no precedential value, we are similarly persuaded by the reasoning in *Lovings*. The statute requires the biological material be "subjected to DNA testing . . . ." *See* TEX. CODE CRIM. PROC. ANN. art. 12.01(1)(C). Nothing in the statute imposes a limitation of ten years or any other time period upon the conducting of DNA testing. We may not add to or subtract from the language of an unambiguous statute. *Ex parte Vela*, 460 S.W.3d 610, 612 (Tex. Crim. App. 2015); *Lovings*, 480 S.W.3d at 111.

Seeking a different conclusion, appellant contends The Lavinia Masters Act, which added language to article 12.01 and is codified in the current version of the statute, shows the legislature recognizes that there was a ten-year time limit on DNA

testing under the former statute. The current version of the statute, with The Lavinia Masters Act amendments, states there is no limitation on sexual assault cases if:

> (i) during the investigation of the offense biological matter is collected and the matter:

> (a) has not been subjected to forensic DNA testing; or

> (b) has been subjected to forensic DNA testing and the testing results show that the matter does not match the victim or any other person whose identity is readily ascertained[.]

TEX. CODE CRIM. PROC. ANN. art. 12.01(1)(C).

Citing comments made by one of the Act's sponsors, appellant contends that by adding the new language exempting cases where biological evidence has not been subjected to forensic DNA testing, the legislature acknowledged that the previous version of the statute at issue in this case did not extend the statute of limitations beyond ten years if DNA testing was not conducted within the ten-year limitations period. Appellant further contends that two appellate court opinions, *S.B.M.* and *Edwards*, conclude the DNA testing must be conducted within ten years for the State to get the benefit of the unlimited-limitations provision.

When a statute is unambiguous, we do not turn to legislative history or subsequent legislative amendments to construe it. *See Chase v. State*, 448 S.W.3d 6, 11 (Tex. Crim. App. 2014); *Harris*, 359 S.W.3d at 629. In this case, the statute unambiguously does not include a temporal requirement that DNA testing be conducted within ten years. Even if we were to consider the 2019 amendment to the

statute, the amendment addresses limitations in cases where biological material was obtained but no DNA testing has occurred, not in cases like the present one where such testing has occurred. *See* TEX. CODE CRIM. PROC. ANN. art. 12.01(1)(C)(i)(A).

Moreover, the two case authorities appellant relies upon do not support his position and are easily distinguished. In *S.B.M.*, a suspect arrested for sexual assault, but not charged within ten years, sought to have his arrest record expunged by arguing that limitations had run and it was too late to charge him. *See S.B.M.*, 467 S.W.3d at 716. The court of appeals determined that the State was required to meet all three prongs of the statutory standard, but it offered no opinion regarding when the prongs must be met. *See id.* at 719. Instead, the court concluded the State could not satisfy the third prong because application of that prong requires DNA testing results and the testing in S.B.M.'s case showed there was not enough DNA to produce a testing result. *Id*. Thus, the court concluded the State could not meet the third prong and the ten-year limitation period would apply. *Id*.

The second opinion appellant relies upon has been withdrawn by the court of appeals that issued it and replaced with a second opinion. *See Ex parte Edwards*, No. 01-19-00100-CR, 2019 WL 4019712 (Tex. App.—Houston [1st Dist.] Aug. 27, 2019), *withdrawn on reh'g*, No. 01-19-00100-CR, 2020 WL 4457985 (Tex. App.—Houston [1st Dist.] Aug. 4, 2020, no pet. h.) (op. on reh'g). The first *Edwards* opinion, like *S.B.M.*, concluded that all three prongs must be met, but did not address,

let alone impose, a requirement that all three prongs be met within ten years. *Edwards*, 2019 WL 4019712, at *3–4.

Similarly, the new opinion on rehearing issued in *Edwards* does not state or suggest that DNA testing must occur within ten years. *See Edwards*, 2020 WL 4457985, at *5, 8–9. In the second *Edwards* opinion, the appellate argument focused on whether the State had provided sufficient proof of the third prong of the standard. *Id*. at *8. To prove its case for applying no limitations, the State relied on police reports that referred to DNA testing and a CODIS match rather than on direct evidence of actual testing. *Id*. In contrast, in the case before us, the investigating detective testified about the police investigation, and the DNA testing report and CODIS match letter were admitted into evidence. Thus, the evidentiary failure that led the *Edwards* court to conclude limitations had run is not present in this case. *See id*. at *8–9.

Because the statute unambiguously does not require DNA testing take place within any particular time period, the 2019 statutory changes address the separate problem of untested sexual assault kits, and the cases appellant relies upon do not support his position and are distinguishable, we are unpersuaded by his argument that DNA testing must be undertaken within ten years. *See Lovings*, 480 S.W.3d at 111–12.

B. Proof of Results

Appellant next contends that even if the State could conduct DNA testing outside of ten years, the testing that was performed did not yield results. Appellant contends this case is identical to *Edwards* in that the only testing result entered into evidence was a CODIS match confirmation letter that requested further testing be conducted. In fact, the evidence in this case is similar to *Lovings* rather than to *Edwards*.

The evidence in *Edwards* that the court of appeals found insufficient to meet the State's burden of proof on the DNA testing prong of the limitations statute consisted of police reports indicating the case had been assigned for "further investigation regarding a CODIS match confirmation" and requesting an analysis of the defendant's buccal swabs to compare to the male DNA recovered from the victim's sexual-assault examination. *Edwards*, 2020 WL 4457985, at *9. The evidence showed the results of analyzing the buccal swabs was still pending at the time of the habeas hearing. *Id*. The State did not admit into evidence any direct evidence showing testing results. *Id*. at *2–3. Reasoning that "testing results" are a necessary statutory prerequisite, the court concluded the State had not met its burden of proof. *Id*. at *9.

In contrast to *Edwards*, in the present case, the evidence includes testimony from the investigating detective about the case, a forensic DNA testing report revealing DNA of the complainant and a male contributor, the CODIS letter showing

–12–

the DNA profile developed by the testing matched appellant's DNA, and a second forensic DNA report showing additional DNA testing confirming the CODIS match. This is similar to the type of evidence described by the court in *Lovings*. *See Lovings*, 480 S.W.3d at 108 (parties stipulated that lab had issued DNA testing report showing DNA of victim and one male contributor and a "hit" during CODIS search).

The current case is distinguishable from *S.B.M.*, where testing did not produce any testing results, and from *Edwards*, where the State failed to submit evidence of testing results. Instead, the State showed that the biological material was subjected to DNA testing. We conclude the evidence before the trial court was sufficient to support the trial court's conclusion that the State had met the second statutory prong.

*Third Prong: Identity*

Appellant next contends that he is a person whose identity was readily ascertained. Appellant points out that his DNA profile had been in CODIS since 2001. Appellant contends if the State had taken even minimal steps to find him and ascertain his identity it could easily have done so. Appellant quotes from the investigating detective's testimony at the habeas hearing where she admitted that a person whose DNA profile was in CODIS could be readily ascertained. Appellant suggests that the standard should be a suspect's identity is readily ascertained if it could be ascertained "easily and with certainty."

In making his argument, appellant must distinguish *Lovings*, which holds directly opposite to his position. As the court in *Lovings* put it, "[i]t is undisputed

that appellant's identity was not ascertained at the time the DNA sample collected during J.L.'s sexual assault exam was tested. Appellant argues instead that his identity could have been 'readily ascertained' if the State had looked for it." *Lovings*, 480 S.W.3d at 112. Like appellant, the defendant in *Lovings* contended the limitations statute imposed a duty on the State to search for a DNA match. *Id*. Citing the maxim of *expressio unis est exclusio alterius*,[3] the court noted that in three separate statutes in the code of criminal procedure, the legislature had chosen to use the word "ascertainable" and thus its choice of the word "ascertained" in the limitations statute was significant. *Id*. The court further noted that the code of criminal procedure imposes "diligence" and "reasonable diligence" obligations on parties in several statutes and concluded, "[i]f the legislature meant to impose additional duties on the State in the circumstances at issue here, it could have done so explicitly." *Id*. Because the police had no suspects, the DNA testing did not lead to any suspect who was readily ascertained. *Id*.

We agree with *Lovings*. The statute as written does not require the State to fish for suspects in the CODIS database. The evidence before the trial court showed the biological material was "subjected to DNA testing" and after such testing, the testing results did not "match the victim or any other person whose identity is readily

---

[3] Meaning the expression of one thing is the exclusion of another. *Williams v. State*, 965 S.W.2d 506, 507 (Tex. Crim. App. 1998). It is a legal maxim based on logic and common sense sometimes used to determine intent in statutes. *Id*.

ascertained." The complainant provided police with only a general description of the suspect, and the State had only a DNA profile of an unknown perpetrator. Thus, appellant's identity was not readily ascertained at the time the biological evidence was subjected to DNA testing.

The trial court found that appellant's identity could not be readily ascertained until June 26, 2018, when the CODIS match was made. Because the statute does not impose a diligence requirement on the State to process DNA profiles into CODIS, the record supports the trial court's finding. *See id*.; *see also Edwards*, 2020 WL 4457985, at *9 n.16 (statute requires DNA results that show matter does not match victim or person whose identity is readily ascertained not person whose identity is readily ascertainable).

Appellant next contends that a straightforward application of the statute would lead to absurd results because no one would be a person whose identity is readily ascertained. We turn to *Edwards* to illustrate why appellant is incorrect.

In *Edwards*, the court recited facts from the police report and several supplemental reports about the investigation. According to the police report, the victim identified her assailant as "Maurice," a man whom she had met at the club where she worked and whom she had dated a few times. *See Edwards*, 2020 WL 4457985, at *2. The victim told police she did not know "Maurice's" last name, but she was described in the report as very hysterical and the officer who interviewed her felt she was not being entirely truthful about her relationship with Maurice and

–15–

was withholding information. *Id*. Two witnesses at the crime scene gave police the license plate number for the assailant's vehicle. *Id*. Upon tracing the license plate number, police discovered an outstanding warrant linking the vehicle to "Maurice Edwards." *Id*. The warrant also gave police the suspect's date of birth and Texas driver's license number. *Id*. After running a criminal history for "Maurice Edwards," the investigating officer noted that the information for "Maurice Ellis Edwards" matched information provided by the victim. *Id*. Two weeks after the offense, when the investigation was closed, the suspect was listed as "Maurice Ellis Edwards." *Id*.

In a footnote to the *Edwards* opinion, the court noted that it need not determine whether the defendant's identity was "readily ascertained" because there was no "statutorily required evidence of forensic DNA testing results." *See Edwards*, 2020 WL 4457985, at *9 n.16. However, the court went on to note the evidence in the record showing that in supplemental reports prepared four days and fourteen days after the offense, the police had already identified appellant as the suspect. *Id*. Although the court did not reach the issue of whether the defendant's identity was readily ascertained, the court's discussion in footnote sixteen suggests skepticism that the State could satisfy the third prong even if it had provided adequate evidence of DNA testing results.

In such a situation, where a suspect's identity is readily ascertained as a result of the investigation, the "no limitations" provision of article 12.01 would not apply. *See id.*; *see also Martinez v. State*, No. 03-12-00273-CR, 2014 WL 1208774, at *2

–16–

(Tex. App.—Austin Mar. 20, 2014, no pet.) (mem. op., not designated for publication) (defendant argued ten-year limitations applied to him because police had enough information to ascertain his identity at time DNA sample was collected; case decided on other grounds). Thus, we reject appellant's suggestion that a plain reading of the statute would render absurd results by allowing the State to always benefit from unlimited limitations by indefinitely postponing DNA testing.

*Constitutionality of the Third Prong*

As a final argument under the third prong, appellant contends the interpretation of "readily ascertained" advanced in *Lovings* and cited with approval in *Edwards* renders article 12.01 unconstitutionally vague because the phrase "any other person whose identity is readily ascertained" would be subject to arbitrary and discriminatory enforcement.

Appellant did not assert that the statute was unconstitutionally vague in the trial court habeas proceedings. Our review of the trial court's order denying habeas relief is limited to issues properly raised and addressed before the trial court. *Ex parte Perez*, 536 S.W.3d 877, 880–81 (Tex. App.—Houston [1st Dist.] 2017, no pet.); *Ex parte Bolivar*, 386 S.W.3d 338, 345 (Tex. App.—Corpus Christi–Edinburg 2012, no pet.). Because it was not preserved, we will not consider this new argument on appeal.

We conclude the trial court did not err in finding appellant's identity was not readily ascertained. Thus, the State met the requirements of the third prong of the limitations statute.

*Conclusion*

Because we conclude the State has shown all three prongs required to apply the "no limitation" provision of the limitations statute, we deny appellant's sole issue. *See* TEX. CODE CRIM. PROC. ANN. art. 12.01(1)(C); *Lovings*, 480 S.W.3d at 111–12; *see also Montgomery*, 2017 WL 3271088, at *3–4. We conclude the trial court did not abuse its discretion in denying relief on appellant's writ application. *See Kniatt*, 206 S.W.3d at 664.

We affirm the trial court's order denying relief on appellant's pretrial application for writ of habeas corpus.

/Amanda L. Reichek/
AMANDA L. REICHEK
JUSTICE

PUBLISH
TEX. R. APP. P. 47.2(b)
191237F.P05