

# IN THE
# TENTH COURT OF APPEALS

### No. 10-21-00267-CR

## EX PARTE MICHAEL SEAN MCCORD

**From the 19th District Court
McLennan County, Texas
Trial Court No. 2021-2982-1**

## MEMORANDUM OPINION

In two issues, Michael Sean McCord, complains about the trial court's denial of his

application for writ of habeas corpus.  We affirm.

**Background**

On November 30, 2016, McCord was charged by indictment with sexual assault of

a child.  *See* TEX. PENAL CODE ANN. § 22.011.

PRE-TRIAL DISCOVERY HEARINGS

More than four-and-a-half-years after indictment, at a pre-trial hearing on June 2,

2021, counsel for McCord complained that several items were not provided in discovery,

including information about the complainant's prior arrests, any CPS referrals on the complainant, any other allegations where the alleged victim was the complainant, and a recording of a 911 call that purportedly corresponded with this allegation. McCord's counsel also noted that, despite the age of the allegations, ambulance records and colposcope pictures were just provided by the State the day prior to the hearing and that the State had not produced the criminal history of one of its witnesses.

In addressing McCord's contention that the State delayed in turning over the forensic interview and colposcope photos, the State argued that there was no forensic interview of the complainant and that the photos had been in the Advocacy Center's possession, not the State's. The State further asserted that no one requested or looked at the photos until McCord requested them prior to the June 2, 2021 hearing.

The trial court then inquired about the CPS records, which the State responded that an investigator in the District Attorney's office had found no CPS report "out of this case." Defense counsel clarified that she was referencing a CPS records of the complainant as a juvenile and when the complainant's felony probation was revoked. The State questioned how records in another case related to this case, argued that the CPS records were not in the State's possession, and noted that there are no juvenile criminal records or juvenile CPS records of the complainant. The trial court ordered the CPS records to be produced for an in-camera inspection to determine relevancy.

Additionally, the State asserted that there was no 911 call, but only a call log, which had already been provided to McCord. Regarding the criminal history of a State's witness, the trial court ordered the State to produce that information the same day.

At a second pre-trial hearing conducted on June 4, 2021, McCord's counsel contended that the State had not provided discovery regarding a case involving William Knox, where the complainant in this case was the alleged victim. Although the allegations in Knox occurred after the allegations in this case, McCord contended that the records were relevant to the limited "probative medical evidence" exception to Texas Rule of Evidence 412. *See* TEX. R. EVID. 412. After discussion, the trial court denied McCord's request for the medical evidence in Knox. However, the trial court inquired further about the status of the CPS records, which still had not been provided.

At a third pre-trial hearing conducted on June 7, 2021, McCord revisited the issue of the CPS records, noting that they still had not been provided.[1] The State "put in everything [it] could to order those" and that it sent over the trial court's order to produce those record to Austin CPS. However, the records still had not been received.

MCCORD'S ORAL MOTION FOR MISTRIAL

On June 8, 2021, the trial court conducted yet another pre-trial hearing in this matter. At this hearing, McCord moved for a mistrial. Specifically, McCord argued that:

---

[1] The record reflects that although discovery disputes remained, the jury was empaneled on June 7, 2021.

> It's an oral motion based on what we've had two pretrial matters over. Our investigator kept looking. In the middle of jury selection yesterday, the jail provided a whole lot more of information through subpoena. It talks about this incident specifically in notes from the jail. And it is definitely impeachment evidence, exculpatory. So we're asking for a mistrial under *Brady*. We have asked for this numerous times. We've had two hearings over it, and we still didn't get it. And then we get it in the middle of trial yesterday only because our investigator kept looking. It talks about other incidents that happened during the time of this incident. So it is very specific this time to this incident. Plus a lot more records, like I said, that were dumped on us. And we just don't have time to flush those out. And so because of the serial 39.14 violations and the *Brady* violation, we are asking for a mistrial in this case.

Counsel for the State noted that she had subpoenaed the jail records also and that the records received pertained to the complainant's book-in information for a 2015 offense. McCord's counsel advised that the records were "progressory [sic] notes" relating to the complainant in April 2015, and that involved an incident at "Elk" where the complainant alleged that she was sexually assaulted by two guys that was "new information that was not in one police report or anything . . . ." These records also included allegations that the complainant was sex trafficked from age twelve to age sixteen by her cousin's husband and that the April 2015 incident occurred when the complainant was fifteen years old. McCord's counsel also referenced testimony from the complainant that "she was having nightmares" from the April 2015 incident. Thereafter, the prosecutor who handled the sex trafficking case involving the complainant informed the trial court that the sex-trafficking case was resolved by a guilty plea and that the complainant had not testified, but rather gave an unrecorded victim impact statement.

After additional discussion about the production of other information, the trial court denied McCord's oral motion for mistrial. McCord then requested a two-week continuance of the trial. Before the conclusion of the hearing, the State provided an explanation of the jail records at issue:

> And Judge, in looking at the records, I kind of figured what they were. What it is is an emergency detention order. She was suicidal a month after he assaulted her. And so she was—as you know how that works—she was picked up by the sheriff's office. She was taken to Providence Hospital. And these nine pages are a medical doctor, a psychiatrist talking to her about her suicidal ideal—ideations. This is no—this is not anything to do with—I mean, I don't know what would be impeachment except for one thing she states about maybe somebody else sexually assaulted her that night, too, which, all right, ask her all about it.

McCord responded that this explanation further demonstrated the need for the CPS records. The trial court concluded the hearing by granting McCord's request for a continuance.

McCord's Written Motion for Mistrial

On June 9, 2021, McCord filed a written motion for mistrial premised on "flagrant and intentional violations of Defendant's right to timely production of discovery" under article 39.14(a) and (h) of the Texas Code of Criminal Procedure. *See* Tex. Code Crim. Proc. Ann. art. 39.14(a), (h). McCord identified the following items as untimely produced:

- McLennan County Jail Records regarding the complainant (discovered by defense investigator on 6/7/2021)

- Complainant CD of police department interview produced on 5/29/2021

- Ambulance records produced on 6/1

- Colposcope pictures allowed to be viewed on 6/2/2021, after a pre-trial hearing

- Criminal history summary of witnesses produced on 6/2/2021, after a pre-trial hearing

McCord argued that the State's "intentional untimely discovery of evidence" was "egregious" and had "seriously compromised" his "right to effective assistance of counsel, right to present a defense, and right to due process." McCord alleged that he was unable "to voir dire on other potentially viable defensive theories, interview additional fact witnesses . . . , enlist the help of subject matter experts to review the records to evaluate other defensive theories, or timely receipt and evaluation of the evidence that could be used against him by the State."

The trial court conducted a hearing on McCord's written motion for mistrial on June 9, 2021. At the hearing, the parties re-asserted many of the same arguments contained in the motion for mistrial and from prior hearings regarding the status of discovery and the reasons for the late production of documents. The State provided a timeline of events, noting the following:

**June 2, 2021**
Status hearing occurred—
Defense asked for records pertaining to [the complainant] as the victim in any other case. After reviewing the Court Reporter's notes, the Court did not address this request.

**June 7, 2021**
Jury was selected and sworn in.

**June 8, 2021**

Before the trial began, defense appeared with records from the McLennan County Jail. The records included from counseling the victim received a month after this offense at DePaul (Providence Hospital). This was after being received on an Emergency Detention Order as a juvenile. Thus, these records are her juvenile mental health records.

This moment is when the State first became aware the victim went to DePaul for suicidal attempt(s) after this offense. The DePaul detention was solely based on her safety and not a situation where law enforcement was dealing with her in any suspect capacity.

The State has since learned that upon arrest of the victim in 2017, the Mental Health Division of the jail interviewed victim to determine if she was in need of services and learned of her EDO experience and requested said records from DePaul.

The State does not have access to the records at the jail held by the jail staff unless the State subpoenas the records. Since we had no knowledge of DePaul records held by the jail, we could not have known to subpoena the records.

The Judge ordered the State to produce in camera the reports from any other criminal case where the victim was [the complainant] where the offense date was March 2015 or prior.

The State ordered two files from archives this same day and received said files. In viewing these files, the State found:

- Therapy records for the victim, dating immediately after this offense date, March 2015

- School records of the victim

- DFPS records where victim was 17 and her name is briefly mentioned

The State immediately turned the therapy records, school records[,] and DFPS records over to defense counsel.

After the Court Ordered the State, the State also provided copies of the two aforementioned police reports to defense counsel.

(Emphasis in original).

After the trial court observed that a continuance would address all the defense concerns, except for the voir-dire issues, McCord emphasized that had the newly-found materials been available before voir dire, the entire nature of the defense questioning would have been different, which would have resulted in different for-cause and peremptory strikes and potentially the seating of different jurors. The trial court ultimately granted McCord's motion for a mistrial, but specifically mentioned: "I do not find there was malice on the part of the State."

MCCORD'S APPLICATION FOR WRIT OF HABEAS CORPUS

After the trial court granted his motion for mistrial, McCord filed an application for writ of habeas corpus seeking to bar re-prosecution based on his claim of a double-jeopardy violation under both the federal and state constitutions. In his habeas application, McCord stated that the following evidence had been intentionally withheld by the State until after trial began:

1. McLennan County Jail Records regarding [the complainant]

    a. Discovered by defense investigator on 6/7/2021 after defense investigator learned about the Knox case on 6/3. After court denied request for contents of Knox case file at Friday 6/4 hearing, investigator subpoenaed more records on Friday 6/4/2021 for production on Monday 6/7/2021 at 1:30pm.

2.  4/24/2015 EDO information/therapy notes (51 pages)

    a.  Reveal [the complainant] was sexually assaulted by two guys, which is new information; and information from 3/21/2019 about [the complainant] testifying in court that she was "trafficked" from the age of 12 to 16 by her cousin's husband, which overlaps which [sic] the alleged offense date in this case;

3.  [The complainant] therapy notes (52 pages) provided by the state the afternoon of 6/8/2021

    a.  Been in the possession of State since December 2016

    b.  Contains information dealing specifically with the indicted offense in this case

4.  Midway ISD records (47 pages) produced on 6/8/2021

5.  CPS records (20 pages) produced on 6/8/2021

    a.  Ruled out extraneous allegation(s) of sexual abuse by [the complainant]

6.  Police packets of Fredrick Lougheed (58 pages) and Trey Cartwright (111 pages) produced on 6/8/2021

McCord also alleged that, in the week leading up to trial, the State produced:

1.  [The complainant] CD of PD interview produced on 5/29/2021

2.  Ambulance record produced on 6/1

3.  Colposcope pictures allowed to be viewed 6/2 after the hearing

4.  Criminal History summary of witnesses produced on 6/2 after the hearing

    In contrast, pre-trial, only 59 pages of reports were previously turned over in discovery in this case on 7/29/2020, along with In-Car Videos and a CD of photos.

McCord argued in his habeas application that retrial is barred by the Double Jeopardy Clause because the State goaded him into moving for a mistrial; the State intentionally failed to disclosed exculpatory evidence with an intent to avoid an acquittal; and "the State intentionally failed to disclose exculpatory evidence with the intent to avoid the defense discovering that the complainant is a habitual victim who made materially inconsistent statements recorded in jail records, that were otherwise not contained in police reports regarding this allegation."[2]

The State filed an "answer" to McCord's habeas application. Relying on the trial court's statement at the hearing on McCord's written motion for mistrial that there was no malice, the State argued that the trial court should deny McCord's double-jeopardy claims and his habeas application based on a failure to prove intentional misconduct on the part of the State.

After a hearing, the trial court once again found "that there was no malicious intent by the two prosecutors in the courtroom" and, thus, denied McCord's habeas application. The trial court certified McCord's right of appeal, and this appeal followed.

---

[2] McCord also asserted in his habeas application that the State's withholding of critical exculpatory evidence deprived him of "his right to a reliable jury verdict at the original trial, his right to voir dire his panel, his counsel's right to conduct a full and fair investigation on his behalf of the charges against him, and his Sixth Amendment right to present a defense."

## Standard of Review and Applicable Law

We review a trial court's decision to grant or deny an application for writ of habeas corpus on the basis of double jeopardy under an abuse-of-discretion standard. *See Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006). A trial court abuses its discretion when it acts arbitrarily or unreasonably, without reference to guiding rules or principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990). In determining whether the trial court's decision was arbitrary or unreasonable, we may not substitute our judgment for that of the trial court, and we must give deference to the trial court's resolution of historical facts supported by the record, as well as application-of-law-to-fact questions that turn on credibility and demeanor. *See Alford v. State*, 358 S.W.3d 647, 652-53 (Tex. Crim. App. 2012); *see also Cantu v. State*, 842 S.W.2d 667, 682 (Tex. Crim. App. 1992).

The Federal Constitution, State Constitution, and the Code of Criminal Procedure all mandate that no person shall be twice put in jeopardy for the same offense. *See* U.S. CONST. amend. V; TEX. CONST. art. I, § 14; TEX. CODE CRIM. PROC. ANN. art. 1.10. The Double Jeopardy Clause of the United States Constitution prohibits a retrial when the first trial ends in a mistrial resulting from circumstances attributable to prosecutorial or judicial overreaching that deprives an accused of the valued right to have his trial completed by the first duly selected jury. *Oregon v. Kennedy*, 456 U.S. 667, 671-72, 102 S. Ct. 2083, 2087, 72 L. Ed. 2d 416 (1982); *Ex parte Lewis*, 219 S.W.3d 335, 371 (Tex. Crim. App.

2007) (adopting the constitutional standard set out in *Oregon v. Kennedy* for determining whether a retrial is barred by the Double Jeopardy Clause after a defense-requested mistrial).

Here, McCord requested, and the trial court granted, a mistrial. When a mistrial is declared at the request of an accused, retrial is not barred unless the error that prompted the mistrial is conduct attributable to the State which was motivated by bad faith or undertaken to harass or prejudice the accused and was committed with the intent to provoke the mistrial. *Kennedy*, 456 U.S. at 670, 102 S. Ct. at 2086; *see Ex parte Masonheimer*, 220 S.W.3d 494, 506 (Tex. Crim. App. 2007). Prosecutorial misconduct does not bar a retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause. *See Ex parte Masonheimer*, 220 S.W.3d at 508-09 (finding a subsequent retrial is barred by the Double Jeopardy Clause after a defense-requested mistrial "when the State intentionally 'goads' or provokes the defendant into moving for a mistrial").

In *Ex parte Wheeler*, the Court of Criminal Appeals listed the following non-exclusive factors to assist in assessing the prosecutor's state of mind:

(1) Was the misconduct an attempt to abort a trial that was going badly for the State? Put another way, at the time the prosecutor acted, did it reasonably appear that the defendant would likely obtain an acquittal?

(2) Was the misconduct repeated despite the trial court's admonitions?

(3) Did the prosecutor provide a reasonable, "good faith" explanation for the conduct?

(4) Was the conduct "clearly erroneous"?

(5) Was there a legally and factually plausible basis for the conduct despite its impropriety?

(6) Were the prosecutor's actions leading up to the mistrial consistent with inadvertence, lack of judgment, or negligence, or were they intentional?

203 S.W.3d 317, 323-34 (Tex. Crim. App. 2006). Using the *Wheeler* factors as our guide, we consider the record evidence.

**Discussion**

On appeal, McCord contends that the trial court abused its discretion by denying his application for writ of habeas corpus based on double jeopardy. Specifically, McCord alleges that the trial court erred by failing to impute the knowledge of the chief crimes against children prosecutor to her subordinate prosecutors regarding the existence of exculpatory evidence that served as the basis for which the trial court granted his motion for mistrial. As a result of this error, McCord asserts that he cannot be retried for this offense under the Double Jeopardy Clause.

As stated earlier, the trial court granted McCord's motion for mistrial. However, the trial judge specifically stated on the record that he did "not find there was malice on the part of the State." Moreover, at the hearing on McCord's habeas application, the trial court once again concluded "that there was no malicious intent by the two prosecutors in the courtroom." Thus, the trial court did not find that the State's actions were intentional.

Furthermore, McCord does not direct us to any evidence in the record that the State engaged in conduct that was motivated by bad faith or untaken to harass or prejudice McCord and was committed with the intent to provoke a mistrial. *See Kennedy*, 456 U.S. at 670, 102 S. Ct. at 2086; *see also Ex parte Masonheimer*, 220 S.W.3d at 506. At the various pre-trial hearings, the State argued that it was not aware of some of the records sought by McCord, especially the complainant's mental-health records that were protected by confidentiality laws. The State also argued that records from other legal proceedings where the complainant was the victim were excluded under Texas Rule of Evidence 412 and that the "testimony" of the complainant sought by McCord was an unrecorded victim impact statement. *See, e.g., Ex parte O'Connor*, No. 09-09-00122-CR, 2009 Tex. App. LEXIS 7650, at *16 (Tex. App.—Beaumont Sept. 30, 2009, no pet.) (mem. op., not designated for publication) (noting that the habeas court is free to accept the State's explanation for the conduct that led to the defendant's motion for mistrial and, under *Oregon v. Kennedy*, could conclude that the prosecutor did not act with the intent to provoke a mistrial so as to avoid an acquittal).

In addition to the foregoing, there is nothing in this record showing that the State's discovery efforts were designed to abort a trial that was going badly for the State. In fact, at the time McCord's motion for mistrial was granted, no witnesses had been called and no evidence had been admitted. Indeed, McCord acknowledged in his motion for mistrial and habeas application that the State's actions affected pre-trial investigation of

the case and jury selection. *See, e.g., State v. Rushing*, No. 09-16-00423-CR, 2017 Tex. App. LEXIS 8854, at *25 (Tex. App.—Beaumont Sept. 20, 2017, pet. ref'd) (mem. op., not designated for publication) ("The fact that the mistrial occurred at a very early stage in the proceedings further supports our view that double jeopardy does not bar Rushing from being retried . . . ."). The trial court's grant of a mistrial remedied the complaint about jury selection and allowed for more time to investigate the allegations in this case.

While we do not condone the State's discovery efforts in this case that is now almost six years old, there is nothing in this record demonstrating that the State goaded McCord into moving for a mistrial or that the State was attempting to avoid an acquittal.[3] *See Kennedy*, 456 U.S. at 670, 102 S. Ct. at 2086; *Ex parte Masonheimer*, 220 S.W.3d at 506; *see*

---

[3] However, we emphasize that article 39.14 of the Texas Code of Criminal Procedure provides that:

> (a) [A]*s soon as practicable* after receiving a timely request from the defendant[,] *the state shall produce* and permit the inspection and the electronic duplication, copying, and photographing, by or on behalf of the defendant, of any offense reports, any designated documents, papers, written or recorded statements of the defendant or a witness, including witness statements of law enforcement officers but not including the work product of counsel for the state in the case and their investigators and their notes or report, or any designated books, accounts, letters, photographs, or objects or other tangible things not otherwise privileged that constitute or contain evidence material to any matter involved in the action and that are in the possession, custody, or control of the state or any person under contract with the state.
>
> . . .
>
> (h) *Notwithstanding any other provision of this article, the state shall disclose to the defendant any exculpatory, impeachment, or mitigating document, item, or information in the possession custody, or control of the state that tends to negate the guilt of the defendant or would tend to reduce the punishment for the offense charged.*

TEX. CODE CRIM. PROC. ANN. art. 39.14(a), (h) (emphasis added).

*also Ex parte Wheeler*, 203 S.W.3d at 334 (considering whether the prosecutor's actions leading up to the mistrial were consistent with inadvertence, lack of judgment, negligence, or intentional conduct). Thus, after viewing the record and considering the non-exclusive *Wheeler* factors, we cannot say that the trial court abused its discretion by denying McCord's habeas application. *See Ex parte Wheeler*, 203 S.W.3d at 323-34; *see also Kniatt*, 206 S.W.3d at 664. Accordingly, we overrule both of McCord's issues on appeal.

## Conclusion

We affirm the judgment of the trial court.


STEVE SMITH
Justice

Before Chief Justice Gray,
     Justice Johnson, and
     Justice Smith
Affirmed
Opinion delivered and filed October 12, 2022
Do not publish
[OT06]

