# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-23-00131-CR

---

**Wilbur Eugene Jackson, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE 21ST DISTRICT COURT OF LEE COUNTY
### NO. 8296, THE HONORABLE CARSON TALMADGE CAMPBELL, JUDGE PRESIDING

---

## D I S S E N T I N G   O P I N I O N

After pleading guilty to the offense of cattle theft, Jackson was placed on deferred adjudication community supervision for 10 years. Jackson later pleaded true to the allegations in the State's motion to adjudicate guilt, under the erroneous impression created by his trial counsel that if he pleaded true, he would be continued on probation. Instead, the district court sentenced him to 50 years' imprisonment. The Court concludes that Jackson's plea was voluntary. Because I conclude otherwise, I dissent.

Jackson contends that his plea was involuntary because trial counsel made misrepresentations to him that rise to the level of ineffective assistance of counsel. Jackson first raised this complaint in the court below when he filed a motion to withdraw his plea, which the district court denied. Thus, I would review Jackson's claim in the context of the district court's denial of that motion.

We review a trial court's denial of a motion to withdraw a plea for abuse of discretion. *See Jackson v. State*, 590 S.W.2d 514, 515 (Tex. Crim. App. 1979); *Smith v. State*, 609 S.W.3d 351, 352 (Tex. App.—Houston [14th Dist.] 2020, pet. ref'd). "A trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement," *Gonzales v. State*, 544 S.W.3d 363, 370 (Tex. Crim. App. 2018), i.e., when it acts arbitrarily and unreasonably or without reference to guiding rules and principles, *Saldana v. State*, 150 S.W.3d 486, 491 (Tex. App.—Austin 2004, no pet.). "A defendant's plea of true to the violations of the conditions of his community supervision must be voluntary." *Sykes v. State*, 586 S.W.3d 522, 531 (Tex. App.—Houston [14th Dist.] 2019, pet. ref'd) (citing *LeBlanc v. State*, 768 S.W.2d 881, 882 (Tex. App.—Beaumont 1989, no pet.)). Therefore, a trial court abuses its discretion in denying a motion to withdraw a plea when the record establishes that the plea was involuntary. *See Rivera v. State*, 952 S.W.2d 34, 36 (Tex. App.—San Antonio 1997, no pet.).

The test for determining the validity of a plea is "whether the plea represents a voluntary and intelligent choice among alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970); *see also Hill v. Lockhart*, 474 U.S. 52, 56 (1985). To be voluntary, a "plea must be the expression of the defendant's own free will and must not be induced by threats, misrepresentations, or improper promises." *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006) (citing *Brady v. United States*, 397 U.S. 742, 755 (1970)). "Misrepresentations that may cause a plea to be involuntary can come from a variety of sources," including "erroneous advice or misinformation by defense counsel." *Ex parte Barnaby*, 475 S.W.3d 316, 322 (Tex. Crim. App. 2015). "A plea based on erroneous information conveyed to the defendant by his trial counsel is involuntary." *Sykes*, 586 S.W.3d at 531 (citing *Ex parte Griffin*, 679 S.W.2d 15, 17 (Tex. Crim. App. 1984)). For example, "a plea of guilty is

2

invalid if it is induced by defense counsel's direct misrepresentation that the State has made a concession which in fact was not part of the plea agreement." *Griffin*, 679 S.W.2d at 17. "[A] defendant is entitled to believe and rely on his attorney's account to him of the terms of a plea bargain," and "if his counsel's misrepresentation of the terms induces his guilty plea, he is entitled to relief." *Id.*

In this case, trial counsel conveyed to Jackson erroneous information regarding the State's plea offer. In Jackson's amended motion to withdraw his plea, counsel represented that he met with the prosecutor on February 7, 2023, and at that time, "counsel mistakenly believed there was a plea agreement if it were pled that day for all three cases" that Jackson had pending. "[C]ounsel thought he understood the agreement, but he did not," and "[b]ased on his misunderstanding," Jackson "agreed to the plea."

Counsel explained the misunderstanding in more detail at the hearing on the motion to withdraw, recounting that when he met with the prosecutor, counsel "brought up the possible settlement agreement whereby we're going to ask if he would agree to a probation on all three cases with the condition that [Jackson] pay back $50,000, whatever the exact amount is over the course of the probation at $3,000 a month," which "would be in the nature of restitution," and that Jackson "also was to make a payment . . . this week, which he did, which was bringing his fees up on the probation." Counsel continued, "I called my client and in discussing it, [Jackson] took it to mean we're going to get a probation coming here and so he's willing to do a plea on probation." Jackson misunderstood the plea because counsel "was not clear enough to him," and counsel acknowledged that it was his "fault totally."

The prosecutor confirmed that there was no agreement regarding probation, representing that he had met with counsel "either on the phone or in person more than a half

3

dozen times" and that "[i]n all of these discussions," he was "very clear" that he was "seeking significant penitentiary time" and that "[a]t no time did [he] agree to allow him to have probation or not oppose a motion for probation." Counsel responded that he "thought at the last minute that possibly [the prosecutor] reversed himself" because counsel has "seen people do that before," but he acknowledged that Jackson "had no idea any of this went on." Counsel added, "When I spoke to [Jackson], he thought we were talking about getting probation and I said that we were going to go to the Judge and ask for probation, he took that to mean that it was a deal. It was not his fault whatsoever."

Jackson testified that counsel called him the morning of his plea and told him that "[counsel] and the special prosecutor had worked out a deal" that Jackson "was going to pay $2,000 today on the restitution of [his] probation and [he] was supposed to start paying $3,000 a month on this cow case." When counsel called Jackson back that afternoon, counsel "told [Jackson] that [they] had reached a deal, but it had to be[] done" that day, and counsel asked Jackson to get to the courthouse before 4:30. Jackson did so "under the impression that [counsel] told [him] that [Jackson] was going to pay the $2,000 today on [his] probation," and "[they] had made an agreement for [him] to pay 3,000 a month and [Jackson] was to remain on the probation until . . . the 50 grand or whatever [counsel] told [him] was paid off."

When Jackson arrived at the courthouse, counsel told him that "the agreement is we're going to go ahead before the Judge" and that Jackson was to "say true, guilty to whatever – guilty to the charges that he asks you." Jackson initially objected, stating, "I'm not going to say guilty to something that I didn't do," but counsel "told me that I had to say guilty in order for that deal to get done on Tuesday." Jackson then told counsel, "Okay," and "if that's the deal, let me go ahead and pay it out and get it over with. I'm tired of wrestling with this. If it's money

4

that they want, I'll pay it out and take the charge." Then, after Jackson entered his plea, he went with counsel to the hallway and asked counsel, "What just took place?" Counsel told him that "the special prosecutor and [counsel] decided . . . to take [Jackson] before the Judge" and "let the Judge do a sentencing. That would be the best thing." Jackson said, "No." Jackson testified that he "would have never pleaded guilty" and explained, "I felt like I got bamboozled. I mean, I come in here and they told me I was doing one thing and it was completely another thing."

I would conclude that the above evidence establishes that Jackson's plea was involuntary based on counsel's conveying to Jackson erroneous information that the State had agreed to continue Jackson on probation. The State confirmed that it had never agreed to that condition, and counsel acknowledged that Jackson's misunderstanding "was not [Jackson's] fault whatsoever" and was counsel's "fault totally." Thus, this was not a case in which trial counsel denied the defendant's claims. Rather, trial counsel insisted that he was to blame. This was also not a case in which the defendant attempted to withdraw his plea after he was sentenced or even during sentencing. Jackson filed his motion to withdraw two days after entering his plea and one day before the hearing on punishment. There would have been no harm in allowing Jackson to withdraw his plea at that time. On this record, I would conclude that Jackson's plea was involuntary and that the district court abused its discretion in denying Jackson's motion to withdraw his plea. *See Griffin*, 679 S.W.2d at 18; *Rivera*, 952 S.W.2d at 36.

For these reasons, I dissent.

_____

Gisela D. Triana, Justice

5

Before Justices Baker, Triana, and Smith

Filed:   November 22, 2024

Do Not Publish